HIRAM B. LANE & another *vs.* BOSTON AND ALBANY RAIL-
ROAD COMPANY.

Evidence that a railroad company received and were paid for transporting property; and
that after its transportation it was placed by them in their depot, and was not delivered by
them upon a proper demand, will support a declaration alleging that the company received
the property, that they agreed to deliver it, and neglected and refused to do so.

In an action against a railroad company for the non-delivery of lost freight, the declaration
of their freight agent, that he "thought perhaps the Thompsons had got it," made
in answer to an inquiry by the consignee, is admissible in evidence against the com-
pany.

In an action against a railroad company for the non-delivery of freight lost from their
depot after its transportation, evidence offered by the defendants, that other freight of the
same kind was always cared for by them in the same manner, and that none had been
lost before, is immaterial.

A railroad company who have transported freight, and afterward placed it in their ware-
house, and who, knowing the consignee, have given him no notice to remove it, are
bound, so long as they keep it, to keep it with ordinary care.

In an action against a railroad company to recover for freight which, after its transpor-
tation, had been lost from their warehouse, evidence in defence, that the care used about
the keeping of the freight was such as railroad companies usually exercise about sim-
ilar freight, is competent, but is not controlling, evidence upon the question of due
care.

CONTRACT. The declaration was as follows: "And the plain-
tiffs say the defendants received fifteen barrels of flour, the prop-
erty of the plaintiffs, and of the value of one hundred and fifty
dollars, and agreed with them to deliver the same to them at
Palmer, in said county; and the plaintiffs paid to the defendants
a legal consideration therefor, and duly demanded of them to
deliver the same to them, but they neglected and refused to do
so, and owe them the value thereof and interest thereon." The
defendants denied each and every allegation of the declaration.

At the trial in the Superior Court, before *Bacon*, J., Henry B.
Smith, one of the plaintiffs, testified that the plaintiffs, about
October 5, 1871, shipped two car-loads of flour, one hundred bar-
rels in each car-load, from Oswego to Palmer, over the defend-
ants' railroad; that the flour should have arrived at Palmer about
October 7; that they sent to the defendants' agent at Palmer
an order, which the witness identified, to deliver one car-load
and eighty-five barrels from the other car-load to divers persons;
that that quantity was so delivered. The order was as follows:

" Freight Agent, Palmer.    Dear Sir, — We have 200 bll. on the way from Oswego to your station.    On its arrival

Please ship to E. P. Smith, Belchertown,    10 bll. xx
and deliver    to Joe. Thompson,    100 bll. xx
to Wm. Thompson,    50 bll. xx
to J. B. Shaw,    5 bll. xx 20 M. D. 9.

This will leave 15 bll. xx on hand.    We will write you in a few days what to do with it.    Yours truly,    Lane & Smith."

The witness further testified that the plaintiffs paid the defendants the freight on the whole number of barrels when they sent the order ; that the plaintiffs made no inquiries and did nothing more about the flour till January 25, 1872, when they sold the remaining fifteen barrels to one Shaw, and gave him an order on the defendants for them ; that this order was presented at the freight depot in Palmer ; that the flour could not be found ; that the witness thereupon went to Palmer and demanded it ; that the defendants' agent searched the freight depot throughout for it and could not find it ; that when he demanded the flour the agent said : " He did n't know what had become of it, and that he thought perhaps " — The defendants here objected to the admission of any guesses or suppositions of the agent.    The court overruled the objection.    The witness continued.    " The agent said that he thought perhaps the Thompsons had got it." He further testified that the Thompsons dealt in flour and groceries ; that the plaintiffs' order to the defendants' agent was to deliver a part of the flour to the Thompsons ; that the plaintiffs paid only in the ordinary way for the freight of the flour from Oswego to Palmer; that they paid nothing, and were not to pay anything for any other service.

Shaw, who received from the plaintiffs the order for the missing flour, testified in their behalf that he bought the fifteen barrels in the latter part of January, to be delivered by the defendants at Palmer ; that he took an order on the defendants' agent for them, and presented it the day after he received it, and called for the flour ; that the flour could not be found.    He also testified that he had once removed goods from the defendants' freighthouse when no one was present, but never till he had receipted

for them, and that it was the custom to have all goods receipted for before they were delivered from the freight-house.

No other evidence was introduced by the plaintiffs of any contract with the defendants, nor of the time when, nor the manner in which, the flour was lost or taken.

At the close of the plaintiffs' case, the defendants asked the court to rule that there was a variance between the contract proved and the contract declared on, and that the action could not be maintained on the declaration as it stood and on the evidence as given. The court declined so to rule, and required the defendants to put in any evidence they might have, before making any ruling.

The defendants produced but one witness, the freight agent at Palmer, who testified that the flour in question arrived by the defendants' train at the station; that, he superintended its removal into the freight-house; that 185 barrels were delivered, according to the plaintiffs' order; and that he set aside the other fifteen barrels by themselves in the freight-house. He also testified as to the character of the building; and that no goods were delivered except after a receipt or an order; and that during the day there was always some person in attendance at the freight-house, which was locked up at night. He also testified as to the number of assistants employed, and that he considered the freight-house a safe place to keep flour; that he kept his own flour there at times; that he had been employed there as agent for eleven years when this flour came; that he had received there many thousands of barrels of flour each year; that he was acquainted with the manner in which such property was cared for and protected by the Worcester and Providence Railroad Company, by the Norwich and Worcester Railroad Company at Worcester, and by the New London and Northern Railroad Company at Palmer, and that by all these roads such property was cared for and treated in substantially the same way as this was in the defendants' freight-house at Palmer; that his knowledge of this was derived from occasional visits to the freight-houses upon the roads named; and that he had never been in the employ of either.

The defendants then offered to prove by him that he treated the flour in question in the same way in which, and cared for it

with the same degree of care with which he had always treated and cared for flour received at the station, and that no flour had been lost from the station before during his employment there. The court, on objection by the plaintiffs, excluded the testimony.

The agent further testified that he was not personally present when the whole 185 barrels were taken away from the station; that he himself delivered but a part of Thompson's flour to him; that one Bowen delivered a part of the flour to Thompson, but that Bowen did not remember anything about it; that after property was counted out to, and receipted for by parties, they were accustomed to get it away when they pleased; sometimes the next day and sometimes several days afterward, without any further application to the persons in charge of the freight-house; but that persons were employed about the freight-house, so that they would be likely to see any one who was taking away goods, and what goods were taken; and that after lots of flour had once been counted out to persons entitled to receive them, those persons were permitted, under the general oversight of the employees of the defendants, but without any new counting, to remove the flour, it having been already receipted for.

He further testified, under the plaintiffs' objection, that if these fifteen barrels had been delivered to any one in the regular course of business, there would be a receipt for them; that there was no receipt for them, and he did not know what had become of them.

On cross-examination, he testified that at the time when the flour was demanded of him by the plaintiffs, he thought Thompson might have got the flour, because he had other flour about that time of the same brand, and that he thought it might have been delivered to him by mistake; that he thought such a mistake might happen; that he had no other theory than that to account for the loss of the flour, and that he never had had any other theory. On reëxamination, he explained that he did not mean that any employee of the road might have delivered the flour to Thompson; that he had no idea that any employee of the road delivered it to him, but that he meant that Thompson might have taken it by mistake; and that when he received goods at the freight-house they were ordinarily kept there till receipted for by the consignee or taken away on orders of the consignee.

No other evidence of any contract between the parties was offered, nor was any evidence offered of the manner in which the flour was taken from the freight-house.   The agent testified that his attention was never called to the fifteen barrels of flour after he set it aside in the freight-house till the plaintiff Smith came and demanded it in February following the October when it arrived, and that he did not remember ever seeing it after he set it aside ; that he had charge of all freight, and knew all the time by the books that it should be there.

At the close of the evidence, the defendants again asked the court to rule that there was a fatal variance between the contract declared on and the evidence, and that the plaintiffs could not maintain their action ; but the court refused so to rule.

The defendants then asked the court to rule that, on the evidence, no contract was made by the defendants as to the custody of the flour after it was placed in the freight-house at Palmer, beyond that which resulted from their previous relation of carriers, to wit, the duty of keeping it with such care as such roads ordinarily take of such property, for a reasonable time, in order that the plaintiffs might have an opportunity to take it away ; that this reasonable time was not such time as might be required to find a purchaser, but only such time as would be reasonably necessary for accomplishing the removal of that quantity of flour ; that after the expiration of such reasonable time the defendants were not under any obligation to take care of the plaintiffs' property, but the same remained wholly at the risk of the plaintiffs, subject only to the duty of the defendants not to do anything to the property which should injure it, and not to deliver it to any one not entitled to receive it ; that there was no evidence in the case of any delivery of the flour to any one by the defendants nor of any injury done to it by the defendants ; and that the verdict must be for the defendants :

That while the duty of warehousemen was on the defendants, they were only under obligation to keep the flour with the same care with which they kept their own property of like kind, or the same care as other railroad companies ordinarily take of like property under like circumstances ; the same degree of care which, in

the exercise of ordinary prudence, men ordinarily take of such
property under like circumstances, and that they were not bound
to take special care of the flour, nor to guard it in any other way
than such railroads usually take care of and guard such property;
that the plaintiffs, when they sent goods by the defendants, as
carriers, contracted that they would remove them within a rea-
sonable time; that in this case they agreed definitely that, if the
defendants would deliver a part of the goods to several parties,
which the defendants were not obliged to do, they would remove
the fifteen barrels in a few days; and that the defendants were
not under any obligation to keep the flour after the few days at
the utmost.

The court refused so to rule, but instructed the jury as follows :
" This is a case brought for non-delivery of freight carried to the
defendants' freight-house, after payment of the freight. The
plaintiffs must prove that the property was shipped to Palmer,
received at Palmer, and held by the defendants for the plaintiffs'
use. No question is made that the property arrived at the sta-
tion, and that fifteen barrels were not delivered. The contract of
the defendants need not be in writing. It results from the course
of business. The contract is, when the freight is carried by the
defendants, to deliver it at the destination, and keep it for that
purpose for a reasonable time. If the freight was shipped, then
the defendants were bound to keep it a reasonable time and give
it up on demand. While the goods are in transit, the carrier is
an insurer of their safety against everything but the act of God,
as it is termed, and the public enemy. But after they have been
received at the end of the route, the contract varies. After they
were received at the station, and during the reasonable time the
defendants were required to hold them, the liability is of another
kind. Thereafter the defendants were bound to keep the prop-
erty with ordinary care, and, if it is lost by the defendants' negli-
gence, the defendants are liable. What is a reasonable time is
to be determined from all the circumstances of the case and the
dealings between the parties. And in this case I instruct you,
that until the defendants notified the plaintiffs that they would
not hold the property longer as warehousemen for the plaintiffs,

they are bound to keep it with ordinary care. The defendants are not discharged from liability as warehousemen, till they have given notice that they will not longer keep the property; but they may remove the property from the freight-house to another place, and keep it there.

" If the plaintiffs show a shipment, arrival, payment of freight, putting of the flour into the freight-house, and a demand of the property, and the defendants did not or could not produce the property, the plaintiffs are entitled to a verdict, unless the defendants set up and show some excuse. The excuse which the defendants set up is, that the flour was lost without their fault. If the defendants satisfy you of this, by the preponderance of evidence, they are entitled to a verdict. If they fail to satisfy you of this, or leave it in doubt, your verdict must be for the plaintiffs.

" The question for you to consider will be : Was the failure to deliver the property by reason of the fault or negligence of the defendants ? Negligence means want of ordinary care; ordinary care means such care as prudent persons use under such circumstances ; and what is ordinary care depends on the character of the property and the place where it is kept. You are to decide whether the care used was reasonable. The evidence introduced that the care used was such as railroad companies usually exercise as to such property is for you to consider; but it is for you to determine whether the defendants did exercise ordinary care with regard to the property. If it is proved, by the preponderance of evidence, that ordinary care was used, you will find for the defendants. If you find that the defendants delivered this property to the wrong person without negligence, the defendants are liable.

" No evidence has been introduced as to the loss except that nearly four months after the flour was brought to the freighthouse it was missing. We have simply the fact that it was there October 7, and was not there January 25. Something was said by a witness as to a theory which he had as to the way in which the loss took place. You are to consider it. What he said is for you and not for the court. If you find that the flour was stolen, or taken by mistake, without any actual delivery by any employee

of the defendants, such stealing or taking by mistake would not render the defendants liable, unless it resulted from a failure by the defendants to take ordinary care of the flour ; but any pointing out or separating of the flour for the person taking it would be an actual delivery."

The jury found for the plaintiffs, and the defendants alleged exceptions.

*A. L. Soule*, for the defendants.

*M. P. Knowlton & T. M. Brown*, ( *G. M. Stearns* with them,) for the plaintiffs.

GRAY, C. J.*  1. The evidence, introduced at the trial, that the defendants received the plaintiffs' property and were paid the freight for transporting it to Palmer, and that the property on its arrival there was put into the defendants' depot, was demanded of them by the plaintiffs, and not delivered by the defendants, was sufficient to support the declaration, and, if believed by the jury, entitled the plaintiffs to recover, unless the defendants proved that it had been lost without any negligence on their part.  *Cass* v. *Boston & Lowell Railroad*, 14 Allen, 448.

2. The declarations of their freight agent in answer to the plaintiffs' demand were made in the performance of his duty, and therefore rightly admitted in evidence against the defendants. *Morse* v. *Connecticut River Railroad*, 6 Gray, 450.  The form in which they were expressed might affect the weight which the jury would allow them, but did not make them inadmissible.

3. The testimony of the same witness as to his conduct and the result of it in other cases was rightly rejected as immaterial. *Lewis* v. *Smith*, 107 Mass. 334.

4. The defendants admit that, after the property had arrived at its destination, they were under the liability of warehousemen to keep the goods with ordinary care for a reasonable time.  The letter from the plaintiffs to the defendants, containing directions as to delivering part of the goods, did not amount to a contract limiting the time during which the defendants would be obliged to take care of the rest.  The defendants, knowing that the plain-

---

* COLT, J., did not sit in this case.

tiffs were the consignees, and having put the property in their own warehouse, were bound, so long as they kept it there and had given no notice to the plaintiffs to remove it, to keep it with ordinary care.

5. The degree of care usually exercised by other railroad corporations under similar circumstances was rightly submitted to the jury as competent, and not as controlling, evidence upon the question whether the defendants had exercised ordinary care in this case. *Cass* v. *Boston & Lowell Railroad*, 14 Allen, 448.

Upon the whole case, therefore, the defendants have no ground of exception, either to the rulings upon evidence, to the instructions given, or to the refusal to give the instructions requested.

*Exceptions overruled.*