HENRY H. GREEN *vs.* BOSTON & LOWELL RAILROAD COMPANY.

Essex.   Nov. 6, 1879. — Jan. 24, 1880.   COLT & AMES, JJ., absent.

In an action against a railroad corporation for the loss of property entrusted to it for carriage, statements made, orally or in letters, to the plaintiff by the defendant's freight agent, to whom the property was delivered, relating to the investigation of the loss, and showing that the property had been in the defendant's possession, are admissible in evidence against the defendant.

In an action against a railroad corporation for the loss of a case of goods entrusted to it for carriage, the defendant's freight agent, to whom the case was delivered, was called as a witness by the plaintiff, and on cross-examination was asked "if he had any authority to take such goods as this case contained." *Held*, that the question was rightly excluded.

This clause in a carrier's contract, " Specie, drafts, bank-bills and other articles of great intrinsic or representative value, will only be taken upon a representation of their value and by a special agreement assented to by the superintendent," does not apply to a family portrait, contained in a wooden case.

In an action against a railroad corporation for the loss of a case containing a portrait of the plaintiff's father, entrusted to the corporation for carriage, the measure of damages is the actual value of the portrait to the plaintiff, and not the market value; and evidence that he had no other portrait of his father is admissible.

In an action against a railroad corporation for the loss of a case of goods entrusted to it for carriage, there was evidence that the case, together with other goods filling two cars, was delivered to the defendant at L. to be transported to P., whence it was to be carried by a line of steamers to A.; that the two cars were received by the agents of the steamer from the defendant "unopened and just as they were received," and were kept on their wharf carefully watched and guarded until the goods were transferred to the steamer; and that, on

unloading the cars, it was found that the case was not in either car. The defendant asked the judge to rule that there was no evidence of the loss of the case between L. and the depot at P. *Held*, that this ruling was rightly refused.

No exception lies to the refusal of a judge to instruct the jury as to what might be the effect of one fact taken separately, when it is accompanied and connected with other facts tending to establish the main issue.

CONTRACT against a common carrier to recover the value of an oil painting, the portrait of the plaintiff's father. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

The portrait was delivered by the plaintiff to the defendant at Lawrence, boxed in a rough board case, to be carried with a large amount of household furniture over the defendant's road, and other roads connecting with it, to Providence, Rhode Island.

The plaintiff put in evidence the written contract of transportation with the defendant, dated September 17, 1875, which enumerated the goods received from the plaintiff, marked " H. H. Green, Philadelphia, Penn., via Clyde Line from Providence," agreed to deliver them to the plaintiff, or order, at the defend-ant's depot in Providence, and contained the following provision: , " No responsibility will be admitted, under any circumstances, to a greater amount upon any single article of freight than $200, unless upon notice of such amount, and a special agreement therefor. Specie, drafts, bank-bills and other articles of great intrinsic or representative value, will only be taken upon a representation of their value, and by a special agreement assented to by the superintendent." No notice of the contents of the case was ever given to the defendant, and the defendant had no knowledge of its contents until a claim was made for its loss, and no special agreement other than the above contract was made.

The plaintiff testified that he had never received the portrait ; that, about two months after the goods were delivered to the defendant, he had a conversation with Abiel Rolfe, the defendant's freight-agent at Lawrence, who said that the defendant had been trying to find the missing case, but so far was unable to do so; that " we or the Clyde Line will have to pay for it," and " we have delivered it to the Clyde Line." This conversation was admitted, against the defendant's objection. The

plaintiff also testified, against the defendant's objection, that he had no other portrait of his father.

One Tabor testified, for the plaintiff, that he had charge of the railroad freight of the Clyde Line in Providence in 1875; that he unloaded the cars containing the plaintiff's goods on September 23, 1875, on the wharf of the Clyde Line at Providence; that he could not now remember how long the cars had been on the wharf before he unloaded them; that he did not know whether, when he went to unload them, the doors of the cars were fastened or not; that the case described by the plaintiff was not in the cars with the other goods of the plaintiff, and he never saw the case; that the wharf of the Clyde Line was about two hundred feet long by sixty feet wide; that it was enclosed by a high board fence, and the gate was securely locked at night; and that a watchman was at all times upon the wharf.

Abiel Rolfe testified, for the plaintiff, that he was the freight agent of the defendant at Lawrence; that he had no doubt he signed the contract of shipment; that he attended personally to the loading of the plaintiff's goods, which were put into two cars; that he remembered the case described by the plaintiff; that the car doors were closed and secured by nailing strips of board behind them, so that they could not be opened without removing the strips; that the cars went over the defendant's road to Ayer Junction, thence over the Nashua & Worcester Railroad to Worcester, and thence over the Providence & Worcester road to their depot in Providence; and that the defendant had no depot in Providence. He was then asked, by the defendant, if he had any authority to take such goods as this case contained. This question was objected to by the plaintiff, and excluded.

The plaintiff also put in evidence two letters to him, one from Rolfe, and the other from J. S. Lincoln, the general freight agent of the defendant. The letter from Rolfe, dated January 10, 1875, stated that the cars were not opened until they arrived in Providence; and that the writer was convinced that the case was somewhere between Providence and Philadelphia, or in Philadelphia. It also contained this sentence: " We, of course, have to account for the case, but would ask you to delay a short time longer, in order to give further opportunity to look for it." The letter from Lincoln, dated January 28, 1876, was as follows:

" Your favor of 6th and 18th, relative to loss of a box from the shipment of your household goods, from Lawrence, Sept. 17th, is received. I have traced the line of roads from Lawrence to Providence, for this missing box, and am well satisfied it was delivered with the other goods to the Clyde Line at Providence; this freight left Lawrence 3.20 P. M. on the 17th of Sept., and was delivered to Clyde Line at 3 P. M. on the 18th, in season for the boat of that date, which was Saturday, and the goods were not forwarded until the next Wednesday, or the 22d, they remaining in the cars on the track, from the afternoon of the 18th, notwithstanding the tracer is indorsed by them 'no delay at Providence,' and I must respectfully refer you, for the adjustment of your claim, to the agent of the Clyde Line."

The defendant put in evidence tending to show that the cars were not opened between Lawrence and Worcester, or between Providence and the wharf of the Clyde Line at that place; but there was no evidence from any one who accompanied the cars from Worcester to Providence. The plaintiff made no claim to recover an amount exceeding $200.

The defendant asked the judge to rule as follows: "1. No notice or representation of the contents of the box claimed to be lost, nor any representation of the value of the oil painting contained in said box having been given to the defendant, and no special agreement for its transportation having been made, the defendant is not liable under the contract produced by the plaintiff. 2. Under the contract put in by the plaintiff, he cannot recover for the oil painting, unless he made representation of its value, and without a special agreement assented to by the superintendent. 3. By the contract shown by the plaintiff, the defendant was not bound to deliver any of the goods mentioned in said contract except at their freight depot in Providence, or at the depot in Providence of the connecting road by which said goods were forwarded. 4. The mere fact that the goods were not received by the Clyde Line of steamers from Providence is not evidence that the goods were lost before they arrived at the depot in Providence. 5. The plaintiff can recover only a fair market value of the article lost. 6. There was no evidence of the loss of the case between Lawrence and the depot at Prov idence."

The judge declined to give any of the above rulings except the third; as to the fourth, he declined to give it, on the ground that the defendant was not entitled to a ruling as to the effect of a certain fact alone, when the same fact was accompanied or surrounded by other facts and circumstances in proof; and full instructions were given which were not excepted to.

The jury returned a verdict for the plaintiff for $200; and the defendant alleged exceptions.

*D. Saunders & C. G. Saunders*, for the defendant.

*A. C. Stone*, ( *C. U. Bell* with him,) for the plaintiff.

MORTON, J. 1. The bill of exceptions does not show any error in the admission in evidence of the plaintiff's conversation with Rolfe. He was the freight agent of the defendant, who made the contract with the plaintiff, and was the person to whom the plaintiff might properly apply to account for the missing case. Statements made by him in the course of investigating the matter of the loss would be declarations within the scope of his agency, and admissible against the defendant. *Lane* v. *Boston & Albany Railroad*, 112 Mass. 455. The defendant contends that the statement made in the conversation, that " we or the Clyde Line will have to pay for it," was not within this rule, because it was a mere admission of the liability of the defendant. But it was accompanied by a statement that " we have delivered it to the Clyde Line," and was thus a denial of the defendant's liability. It contained an implied admission that the case had been delivered to the defendant, and in this view was competent, even if it had been an admission of the defendant's liability. For the same reasons, the letters of Rolfe and of Lincoln were properly admitted.

2. Rolfe was produced as a witness by the plaintiff, and, upon cross-examination, the defendant asked him " if he had any authority to take such goods as this case contained." This question was rightly excluded by the court. Rolfe was the freight agent of the defendant at Lawrence, held out to the world as authorized to receive goods and to make contracts for their transportation. There is nothing to show that the plaintiff had notice of any limitation of his authority. He had the right to assume that Rolfe had the general authority implied by his

position, and is not affected by any private instructions limiting that authority.

3. The contract between the parties contains the following provision: "No responsibility will be admitted, under any circumstances, to a greater amount, upon any single article of freight, than $200, unless upon notice of such amount and a special agreement therefor. Specie, drafts, bank-bills and other articles of great intrinsic or representative value, will only be taken upon a representation of their value, and by a special agreement assented to by the superintendent." The defendant asked the judge to rule that, as the plaintiff had not given notice of the value of the lost case, and had made no special agreement as to its transportation, assented to by the superintendent, he could not recover.

The plaintiff admitted that the first clause of this provision applied to this case, and claimed and recovered only a verdict for $200. The other clause does not specify portraits as articles which will be taken only upon a representation of their value and a special agreement. It specifies "specie, drafts, and bank-bills." In determining the meaning of the words "other articles of great intrinsic or representative value," the rule *noscitur a sociis* applies; the general words following the particular enumeration must be held to include only articles of the like kind.

A portrait is not an article of great intrinsic or representative value, like specie or drafts or bank-bills, and therefore the Superior Court rightly refused to rule as requested in the first and second prayers of the defendant.

4. The defendant asked the court to rule that "the plaintiff can recover only a fair market value of the article lost." The general rule of damages in trover, and in contract for not delivering goods, undoubtedly is the fair market value of the goods. But this rule does not apply when the article sued for is not marketable property. To instruct a jury that the measure of damages for the conversion or loss of a family portrait is its market value would be merely delusive. It cannot with any propriety be said to have any market value. The just rule of damages is the actual value to him who owns it, taking into account its cost, the practicability and expense of replacing it, and such other considerations as in the particular case affect its

value to the owner. *Stickney* v. *Allen,* 10 Gray, 352. The court properly refused to give the instruction requested, and we are to presume gave proper instructions instead thereof. This being the rule of damages, the testimony of the plaintiff that he had no other portrait of his father would bear upon the question of its actual value to him and was competent.

5. The defendant requested the judge to rule that there was no evidence of the loss of the case between Lawrence and the depot at Providence. But there was evidence that the case, together with other household furniture filling two cars, was delivered to the defendant at Lawrence, to be transported to Providence, whence it was to be carried by the "Clyde Line" to Philadelphia; that the two cars were received by the agents of the Clyde Line from the defendant, "unopened and just as they were received from the north," and were kept on their wharf carefully watched and guarded, until the goods were transferred to the steamer; and that, on unloading the cars, it was found that the case containing the portrait was not in either car. It was the exclusive province of the jury to judge of the credit and weight of this testimony. If it satisfied them that the case was not lost after the cars reached Providence, the necessary inference was, either that it was not put into the car at Lawrence, or that it was lost between Lawrence and Providence. The instruction requested, therefore, was rightly refused.

6. The judge also rightly refused to instruct the jury, as requested in the fourth prayer, that "the mere fact that the goods were not received by the Clyde Line of steamers from Providence is not evidence that the goods were lost before they arrived at the depot in Providence." The judge was not required to instruct the jury as to what might be the effect of one fact taken separately, when it was accompanied and connected with other facts tending to establish the main issue. *Packer* v. *Hinckley Locomotive Works,* 122 Mass. 484.

We have thus considered all the points upon which the defendant now insists, and find no reason for setting aside the verdict.

*Exceptions overruled.*