December 13, 1909.

No. 4827.

(Court of Appeal, Parish of Orleans.)

## NAT STRAUSS vs. THE PULLMAN PALACE CAR CO.

Merrick, Lewis, Gensler & Schwarz for plaintiff and appellant.

Boatner & Manion for defendant and appellee.

ST. PAUL, J.—Plaintiff, provided with a ticket entitling him to a berth in one of defendants sleeping cars, entered the car "Alexis" at New York. The train reached Washington about 9 p. m., and shortly afterwards plaintiff retired to his rest. His valise, too large to be placed beneath the berth, lay alongside of him in the aisle of the car. It was still there at 11 o'clock at night when the train conductor came to collect his railroad fare, which he paid.

— 67 —

The sleeping car conductor went off duty and was succeeded by the porter at 3 o'clock in the morning. It is not shown that any passengers entered or left the car during the night or that any stops were made except at Lynchburg, Va., say between 4 and 5 o'clock in the morning.

As the train approached Bristol on the Tennessee-Virginia line (about 7 o'clock in the morning), plaintiff was awakened by the porter who informed him that if he wished to breakfast he must do so at Bristol as there was no dining car attached to the train.

When he arose he missed his grip and his shoes and called the conductor to ascertain their whereabouts, thinking they had been put away.

The question here presents itself whether under the circumstances plaintiff had the right to institute then and there an inquiry concerning the whereabouts of his effects; whether or not he addressed his inquiry to the proper persons; and whether or not it was any part of the duty of those persons to answer his very natural inquiries.

We believe the first question answers itself. Had plaintiff failed to complain and give notice at once that his effects were not where apparently they should have been, it would have constituted negligence on his part, sufficient perhaps to bar any claim which he might have had should it afterwards be discovered that the articles had been lost or stolen; for had he made complaint immediately there might yet have been time to find or recover the missing articles. We need, therefore, say but little of plaintiff's right in the premises to know something of the whereabouts of his property, removed without his knowledge or consent during the time when defendant owed him the duty of keeping watch over it. His rights against the company and duties towards it, led

but in one direction, an immediate inquiry about the missing articles.

Nor do we doubt that his inquiry was directed to the proper persons. If plaintiff had the right to make any inquiry and to make it then and there, there must naturally have been some one of whom that inquiry might then and there be made. That some one was not any member of the train crew in the employ of the railroad company, nor yet the directors and general officers of the defendant company not then and there present but the servant of the sleeping car company, whose duty it was to keep guard over the coach whilst the passengers slept.

And where one has a right, or it be his duty, to institute an inquiry, and he addresses himself to the proper person, it is the duty of the person so addressed to satisfy that inquiry if he can, and the answers which he makes touching the subject-matter thereof are answers made in the discharge of his duty whether he be acting for himself or for others.

Thus it was held by the Supreme Court of Massachussetts in **Moss vs. Rail Road Co., 6 Gray, 450**, that it was part of the duty of a conductor, baggage-master or station-master, of a railroad company "to deliver the baggage of passengers and to account for the same if missing, provided inquiries were made for it within a reasonable time."

"Their declarations, made in answer to such inquiries, were therefore made by them as agents of the defendant within the scope of their agency and whilst it continued. They should therefore have been admitted in evidence."

And in **Gott vs. Densmore, 11 Mass. 51**, it was held "that the admissions of the freight clerk of an express company to whom plaintiff had been referred for information as to the manner of the loss, made in answer to inquiries by plaintiff, are admissable in evidence against the express company."

Again in **Lowe vs. Boston & Albany R. R., 112 Mass.** **455**, it was held that the declaration of a freight agent in answer to the inquiries by a consignee about lost freight were rightly admissable in evidence against the defendants.

So also in **Green vs. Boston & C. R. R., 128 Mass. 225,** it was held that the freight agent of a defendant who made the contract with the plaintiff was the person to whom plaintiff might properly apply to account for the missing article, and statements made by him, in the course of investigating the matter of the loss, would be declarations within the scope of his agency and admissable against the defendant.

In Ohio it was held **(Baltimore & Ohio R. R. vs. Campbell, 36 Ohio State, 649),** that application for baggage-having been made to the agent in charge of the baggage room as soon as practicable, what the agent said and did with respect to the baggage were clearly competent evidence for the plaintiff on the trial.

To the same effect are **Burnside vs. Grand Trunk R. R., 47 New Hampshire, 554; Central R. R., vs. Skellie, 12 South-Eastern Rep. 1017, (Ga.); and Thompson vs. St. Louis Etc., R. R. Co., 59 Mo. Appeals, 37.**

And the very question under consideration herein, arose before the Supreme Court of Missouri, in **Stampton vs. Pullman Palace Car Co., 42 Mo. Appeals, 134.** There it was held that the declarations of the conductor and porter of a sleeping car made in answer to the inquiry of a passenger, whilst still on the car as to what had become of her baggage, placed away by the conductor, were admissable in evidence against the company.

Against this long array of well considered cases we are referred to but a single case, where a doctrine precisely contrary to that stated in the last-mentioned case appears to have been held by the same Court; but that

— 70 —

case is earlier in date than the last-mentioned and hence in effect overruled unless inapplicable; for in that case it would seem that the action was one against the **railroad company,** whilst the declaration that was excluded was that of the **porter of the sleeping car,** not even in the employ of the railroad company.

(Note:—We have not at our command the Missouri Appeal Reports and as to the three cases last mentioned have accepted them on the authority of the briefs filed by counsel. But the other authorities cited by us suffice for our purpose.)

**Clancy vs. Barker, 69 L. R. An. 642 (Nebraska),** and **Hill vs. Opelousas, 11 La. An. 292,** have no application. In both these cases the declarations which it was sought to introduce in evidence were made long after the occurances and not in the course of any investigation which plaintiff had a right to make and in which it was part of the agent's duty to assist. We have not found it necessary to consider whether the declaration of the conductor or porter were part of the "res gestae," for we consider them to be admissions. Hence we make no reference to the authorities on that point.

And now, to resume the thread of the case; when plaintiff arose and missed his grip, he called the conductor, as we have said, to ascertain what had become of it. This one answered that the grip was in place when he went off watch; and assisted by the porter he made a search for it which, however, was not successful.

The porter asserted that he "knew positively that no one had gotten into the train that night, but that the door at Lynchburg was found ajar, or open—the rear door of the car." This was the testimony of plaintiff.

Defendant produced the conductor and porter and tendered them to plaintiff for examination. The conductor testified that he knew nothing of the disappearance of

the valise but got a report of it the next morning "as a result of a conversation with the gentleman who complained of the loss at the time," and that he himself "made a report on it." The porter testified that he went on duty at 3 o'clock in the morning and sat on a camp-stool at the end of the aisle. That the train stopped at Lynchburg. That he could not say where the loss occurred; that when he looked for the grip in the morning it could not be found.

Neither of these witnesses was asked by counsel for plaintiff whether any admissions such as testified to by plaintiff were made or whether the door of the coach had been found open at Lynchburg; and counsel for defendant asked the witnesses no questions at all.

If plaintiff's proof was sufficient without it, we do not think that it was incumbent on him to corroborate his own unimpeached testimony by that of the witnesses tendered by the defendant, or to prove the truth of the admissions about which he testified. He was at liberty to take his chances as to the sufficiency of the proof already administered by him and has done so.

The testimony of plaintiff that the conductor and porter made such declarations stands therefore uncontradicted, and the truth of their admissions stands unimpeached.

We think that this proof is sufficient, and the fact that the rear door of the coach **was found** adjar or open at Lynchburg is sufficient to show that the active and continuous watch which defendant was obliged to maintain whilst the passengers slept, was relaxed at some time in the night. Had it not been relaxed the person on watch would have **seen** when the door was opened, and that fact coupled with the disappearance of an object "too large and conspicious to be concealed in the taking without detection by an ordinary observer" proves such

a state of facts "as to leave the legal conclusion of inculpating negligence the only one that could be drawn from all the facts."

**Michalloffsky vs. Car Co., No. 1420** of our docket.

The nature and value of the lost valise and its contents are not disputed, nor that they were such as a prudent person might well have about him whilst travelling.

We are of opinion that there is error in the judgment appealed from.

For the reasons assigned it is ordered that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff Nat Strauss and against defendant The Pullman Company, for the full sum of ($252.75.) Two hundred and fifty-two 75/100 dollars with legal interest from judicial demand until paid and the costs of both courts.

December 13, 1909.

Rehearing refused January 10, 1910.

Writ refused by Supreme Court February 25, 1910.