H. LEVI, S. FRIEDMAN and J. MINDA, Partners doing business under the firm name and style of H. LEVI & COMPANY, Respondents, v. MIS-SOURI, KANSAS & TEXAS RAILWAY COM-PANY,.Appellant.

Kansas City Court of Appeals, May 29, 1911.

1. CARRIERS OF GOODS: Warehousemen: Loss of Trunks. In an action against defendant railway company to recover damages for the loss by fire of two sample trunks left by one of the plaintiffs in defendant's depot consisting of two box cars, plaintiff sought to recover on a negligent breach of defendant's duty as a warehouseman, *held*, that after the trunks were unloaded from the train. and especially after defendant was compelled, on account of the failure of their owner to claim and remove them, to store them at its depot, defendant's duty as a common carrier terminated, and the duties which it owed plaintiffs with respect to the trunks were those of a warehouseman.

2. ———: Bailment: For Hire or Gratuitous: Duty the Same. Whether a bailment is for hire or gratuitous, in either case it is the duty of the bailee to take the same care of the subject of the bailment as an ordinarily careful and prudent person in his position would bestow on his own property.

3. ———: ———: Negligence: Accidental Loss of Damage. The gist of a cause of action inuring to the bailor from accidental loss of or damage to the property during the bailment is negligence, and the burden is on him, in an action against the bailee to plead and prove negligence as the cause of the loss or injury, and this burden continues to the end of the case.

4. ———: ———: Burden of Proof. Where the prima facie case of plaintiffs, who proved the failure of defendant to deliver the trunks on timely demand, was met by proof which accounted for the loss of the property by fire, it did not devolve on defendant to prove that the origin of the fire was not due

Levi & Co. v. Railroad.

to its own negligence, but the burden was on plaintiffs to plead and prove the existence of negligence as the proximate cause of the fire.

5. ———: ———: **Box Cars as Stations: No Inference of Negligence.** Where there is no proof that the box cars were defective, or any less secure from the depredations of tramps or lawless characters than the ordinary frame depots in small towns, no inference of negligence may be drawn from the fact that defendant had converted box cars into depot buildings in which plaintiff's trunks were stored.

6. ———: ———: ———: **Night-Watchman.** Where the station was in a respectable residence part of the town, and defendant observed the same precautions in the care of the property of its patrons stored in the depot that it did of its own, by locking up at night the, box cars used as a depot, defendant was under no duty to maintain a night-watchman.

7. **EVIDENCE: Carriers of Goods: Admission of Agent.** In an action against defendant railway company to recover damages for the loss by fire of two sample trunks left by one of plaintiffs in defendant's depot consisting of two box cars, plaintiff sought to recover on a negligent breach of defendant's duty as warehouseman. Plaintiff testified that the station agent told him the next morning that waste saturated with coal oil had been allowed to remain in the car, which he thought probably caused spontaneous combustion. *Held*, that, evidence of an admission of the fact that oil-soaked waste was kept in the car, had a bearing on the cause of the fire, and hence was admissible, on the theory that it was a verbal act performed in the discharge of the railroad's duty to account for the property.

8. ———: ———: **Opinion of Agent.** Where the agent, however, expressed the opinion that the fire was caused by spontaneous combustion or marauders, his opinion had no evidentiary weight, and should not have been received in evidence. It was purely speculative and conjectural.

9. **CARRIERS OF GOODS: Negligence: Proof: Spontaneous Combustion.** In an action against defendant railway company to recover damages for the loss by fire of two sample trunks left by one of plaintiffs in defendant's depot consisting of two box cars, plaintiff sought to recover on a negligent breach of defendant's duty as warehouseman. On the bare fact that there was some oily waste in the car, plaintiff rested his claim that the origin of the fire was spontaneous combustion. *Held*, that negligence is a positive wrong that must be proved, not, necessarily by direct evidence, but, at least, by circumstances which, if believed to exist, point to the negligence averred as the only reasonable cause of the event. Here, the inference that defendant sought to raise was guess-work and speculation.

Appeal from Jackson Circuit Court.—*Hon. Sam Sparrow,* Special Judge.

REVERSED.

*E. A. Neel* for appellant.

(1)    The court erred in not sustaining defendant's demurrer to the second count of petition at the conclusion of the evidence offered by the plaintiff. Whitting v. Railroad, 101 Mo. 639; Milling Co. v. Transit Co., 122 Mo. 274; Holtzclaw v. Duff, 27 Mo. 394; McCarthy v. Walf, 40 Mo. 323; Plow Co. v. Railroad, 61 Mo. App. 374; Cohen v. Railroad, 59 Mo. App. 68. (2)    The court erred in not sustaining defendant's demurrer to the second count of plaintiff's petition at the conclusion of all the testimony. Same authorities as above. (3)    A warehousemen's duty is merely to take ordinary and reasonable care of property and he is only liable when shown to be guilty of some negligence or carelessness. Holtzclaw v. Duff, 27 Mo. 395; Burges v. Storage Co., 136 Mo. App. 38; Gashweiler v. Wabash, 83 Mo. 118; Cramer v. U. S. Ex. Co., 56 Mo. 528. (4)    It was the duty of the plaintiffs (Minda) to remove its trunks promptly from the depot, and in not doing so it was guilty of contributory negligence. Felton v. Railroad, 86 Mo. App. 335; Hogan v. Citizens Ry. Co., 150 Mo. 55. (5) . The court erred in permitting the witness Minda to state over the objection of the defendant, as to what he said Daily said on the morning after the fire as to what he thought caused the fire and what the depot had in it. (a).    Because Dailey was not authorized to bind the defendant by any such admission, even if it was made. Moran v. Brown, 27 Mo. App. 491. (b).    Because such evidence was hearsay. Corrister v. Railroad, 25 Mo. App. 627; Adams v. Railroad, 74 Mo. 556; Chillicothe v. Raynard, 80 Mo. 185. (6)    The court erred in permitting the witnesses Pelletier and Gardner to

testify over the objections of the defendant as to whether waste and oil mixed would spontaneously combust. (a). This was no case for expert testimony because the jury was as competent as the witnesses to judge whether oil-soaked waste would combust spontaneously. Benjamin v. Railroad, 133 Mo. 289.; Hurst v. Railroad, 163 Mo. 320; St. Louis v. St. Louis, etc., 120 Mo. 550. (b). These witnesses and especially the witness Pelletier were not qualified as experts. Graney v. Railroad, 157 Mo. 680; Turner v. Hoor, 114 Mo. 344; Hunt v. Railroad, 94 Mo. 260; State v. Miller, 44 Mo. 165. (7) Plaintiff's first instruction was erroneous in the following particulars: (a) Although the petition charged the defendant with negligence and defendant's liability, if any, was for negligence, the instruction did not require the jury to find the defendant guilty of negligence. Haitzclaw v. Duff, 27 Mo. 392; Gashweiler v. Wash, 83 Mo. 112. (b). The instruction laid down a higher degree of care for defendant than the law requires. (c). The instruction purported to be an instruction on the whole case yet it omitted one of the defenses of the defendant, to-wit, contributory negligence. Maack v. Schneider, 57 Mo. App. 434; Boles v. Railroad, 134 Mo. App. 704; Tinkle v. Pyle, 212 Mo. 471.

*I. G. Ringolsky* for respondents.

(1) The court properly overruled defendant's demurrer to all the evidence introduced. Because a prima facie case was made by plaintiffs, by showing a delivery of the sample trunks in good condition to defendant and a failure of defendant to return the trunks, when demanded; and because the evidence almost conclusively established liability on the part of defendant and furthermore because a full Abstract of Record of all the evidence was not brought to this court by appellant; and because plaintiffs made a prima facie case, by showing they delivered the trunks

in good condition to defendant and when they called for them next morning, the defendant failed to return them to plaintiffs. Collier v. Storage & Moving Co., 147 Mo. App. 700. (2) The testimony of plaintiff, Minda, as to statements made to him by the station agent, Daily, when he presented his checks, and demanded his trunks, the morning after the fire was unquestionably competent and binding on the defendant. Hampton v. Pullman Car Co., 42 Mo. App. 134; Thompson v. Railroad, 59 Mo. App. 37. (3) The testimony of witnesses, Pelletier and Gardner, that "oil-soaked waste" would under conditions, spontaneously combust, was competent. Boettger v. Iron Co., 124 Mo. 104; Combs v. Construction Co., 205 Mo. 391; Bradford v. Railroad, 64 Mo. App. 475; Sowden v. Idaho Co., 55 Cal. 443. (4) The instructions given for plaintiff were legal and proper and repeatedly declared to be so by our appellate courts. Rossier v. Wabash, 115 Mo. App. 515; Gashweller v. Railroad, 83 Mo. 112.

JOHNSON, J.—Plaintiffs, wholesale merchants at Kansas City, sued the defendant railroad company to recover damages for the loss by fire of two sample trunks and contents at defendant's depot in Mound Valley, Kansas. The petition contained two counts. In the first, plaintiffs sought to hold defendant as a common carrier, in the second, the cause pleaded was the negligent breach of defendant's duty as a warehouseman. At the close of the evidence plaintiffs dismissed the first count. The court overruled defendant's demurrer to the evidence and submitted to the jury the issue of whether or not the loss of the property was due to negligence of defendant as warehouseman. The verdict and judgment were for plaintiffs and the cause is here on the appeal of defendant.

The loss occurred during the night of April 21, 1909. One of the plaintiffs, J. Minda, was on a trip

through Kansas as a traveling salesman for plaintiffs and carried two trunks filled with sample merchandise. He checked the trunks as baggage and at Parsons, Kansas, found that one of them had been detained at Oswego. He informed defendant's agent and baggageman that he was a traveling salesman; that his trunks contained samples and that he could not go on without both of them. The agent telegraphed to Oswego and had the belated trunk forwarded to Parsons. On its arrival, Minda bought a ticket to Mound Valley, had the two trunks checked on the ticket, and paid the excess baggage charges on them. He and his trunks were carried on the same train which arrived. at Mound Valley at 6:30 p. m. He saw the trunks being unloaded from the baggage car but, as he had not been in Mound Valley before, went to a hotel without arranging for their disposition. The hotel had no sample room, and, finding that the stores were closed, Minda left the trunks in defendant's care overnight. Defendant was using two box cars as a station, one as an office and waiting room for passengers, and the other as a depot for freight, baggage and company property. When the agent found that the trunks would not be removed that evening he had them taken into the depot car and when he closed for the night, he locked the door. Defendant kept no one on duty at the station at night and depended on locks for the security of its own property and that of its patrons. The cars were in good condition and the locks were heavy and strong. The fire started in the depot car. None of the witnesses knew how it originated. There was no fire in the car and the only hightly combustible materials in it "were coal oil kept by the company in a ten gallon can for switch lights and office lamps and a few pounds of waste for use in cleaning lamps. There is no evidence that any waste that had been used was kept in the car except the testimony of Minda who testified at the trial that the agent told

him the next morning that waste saturated with coal oil had been allowed to remain in the car. This conversation occurred at the time Minda presented his checks and demanded his trunks. We quote the testimony:

"I went over there and saw they had the fire and not knowing whether my trunks were destroyed or not I handed my two checks and asked for my trunks. He said my trunks of samples were burned up that night; that the fire had occurred about midnight and they were burned up. I asked him what was the cause of the fire and he says he thought that probably tramps had broken in there during the night. He says that he thought either someone had broken in and set fire to the place or either they had a lot of waste and refuse in there which he thought probably caused spontaneous combustion and after he took the number of my checks, he said he would make a report of it. He says a lot of oil soaked waste in there that they had been using for the lamps and other tools."

The testimony was admitted over the objections of defendant. It was customary for defendant to keep a can of coal oil and waste in its depots at small towns and aside from the testimony quoted there is evidence to the effect that oil-soaked waste was useless for any purposes and was not kept in the depots. Over the objection of defendant plaintiffs introduced expert evidence that waste saturated with coal oil will sometimes inflame spontaneously if kept in a close, unventilated place where the temperature is high.

The negligence of defendant specified in the petition thus may be summarized: 1st, using old, defective and insecure box cars in lieu of a station house; 2nd, failing to maintain a night watchman at the station; 3d, failing to use proper precautions to protect the premises from fire.

After the trunks were unloaded from the train and especially after defendant was compelled, on account of the failure of their owner to claim and remove them, to store them in its depot, defendant's duties as a common carrier terminated and the duties it owed plaintiffs with respect to the trunks were those of a warehouseman. [Witting v. Railway, 101 Mo. 1. c. 639; Stanard Milling Co. v. Transit Co., 122 Mo. 1. c. 274; Holtzclaw v. Duff, 27 Mo. 392; McCarthy v. Wolfe, 40 Mo. 520; Plow Co. v. Railway, 61 Mo. App. 372; Cohen v. Railroad, 59 Mo. App. 66.]

We do not deem important the question of whether the bailment was for hire or gratuitous. If the former, defendant would be liable for loss occasioned by its failure to exercise ordinary care of the property and though the authorities generally hold that a gratuitous bailee is liable only for gross negligence our Supreme Court hold in such cases that want of ordinary care is gross negligence. [Standard Milling Co. v. Transit Co., supra.] In either case it is the duty of the bailee to take the same care of the subject of the bailment as an ordinarily careful and prudent person in his situation would bestow on his own property. The gist of a cause of action inuring to the bailor from accidental loss of or damage to the property during the bailment is negligence and the burden is on him, in an action against the bailee to plead and prove negligence as the cause of the loss or injury and this burden continues to the end of the case. [Witting v. Railway, supra; Standard Milling Co. v. Transit Co., supra.]

Inasmuch as the plaintiff, in such cases, generally is at a disadvantage in obtaining accurate information of the cause of the loss or damage the law considers that he makes out a prima facie case of negligence by proof of the bailment and of the failure or refusal of the defendant to deliver the property on proper and timely demand. [Berger v. Storage Co., 136 Mo. App.

l. c. 40; Collier v. Storage Co., 147 Mo. App. l. c. 720.] But this does not mean that the bailee must affirmatively prove a negative, i. e., that he was not guilty of negligence in the care of the property. "When the loss of the goods is established, the burden of proof devolves upon the carrier to show that it was occasioned by some act which is recognized as an exemption. This shown it is prima facie an exoneration and he is not required to go further and prove affirmatively that he was guilty of no negligence. The proof of such negligence, if negligence is asserted to exist, rests on the other party." [Read v. Railroad, 60 Mo. 199; Standard Milling Co. v. Transit Co., supra.]

In the present instance the prima facie case of plaintiffs was met by proof which accounted for the loss of the property by fire and it did not devolve on defendant to prove that the origin of the fire was not due to its negligence but the burden was on plaintiffs to plead and prove the existence of negligence as the proximate cause of the fire.

No inference of negligence may be drawn from the fact that defendant had converted box cars into depot buildings nor is there any proof that the box cars were defective or any less secure from the predations of tramps or lawless characters than the ordinary frame depots in small towns. Nor was defendant under any duty to maintain a night watchman. The station was in a respectable residence part of the town; there was no lawless element to contend against and there was no more reason for saying that it was negligence for defendant to lock up the cars at night and leave them unguarded than for saying that it was negligence for the merchants to leave their stores unguarded. Defendant observed the same precautions in the care of the property of its patrons stored in the depot that it did with its own property, and there is no ground for the conclusion that it was negligent in the care of its own property. It may be that thieves

broke into the depot and set the fire or that the fire had some other incendiary origin but there is no proof in the record that such occurrence was due to lack of ordinary care. The chief insistence of counsel for plaintiffs is that the fire was due to spontaneous combustion resulting from the negligent deposit of oil-soaked waste in the car. That hypothesis rests entirely on the conversation Minda testified he had with the agent. We do not agree with defendant that this testimony was wholly inadmissible. The agent was acting within the scope of his authority and in the actual discharge of his duties in answering plaintiff's demand for the property. It was incumbent on defendant as bailee either to deliver the property or to account for its inability to deliver and statements made by its authorized agent pertaining to the loss and its cause should be considered as verbal acts performed in the discharge of the duty to account for the property. [Hampton v. Pullman Car Co., 42 Mo. App. 134; Thompson v. Railroad, 59 Mo. App. 37; Morse v. Conn. River, 6 Gray (Mass.), 450; Lane v. Railroad, 112 Mass. 455; Curtis v. Railroad, 49 Barb. (N. Y.) 148; Railroad v. Campbell, 36 Ohio St. 647.]

The fact that oil-soaked waste was kept in the car had a bearing on the question of the cause of the fire and evidence of an admission of the existence of such fact was admissible. But the opinion expressed by the agent that the fire was caused either by marauders or by spontaneous combustion has no probative force and should not have been received in evidence. What he said discloses that his opinion was purely speculative and conjectural and it would oppose one of the most fundamental rules of evidence to accord any weight to such statements.

The result of the process of elimination we have applied reduces plaintiffs' charges of negligence to a very narrow compass. On the bare fact that there

was some oily waste in the car, we are asked to infer that the origin of the fire was spontaneous combustion. Such inference cannot be indulged without resort to guesswork and speculation. Plaintiffs' expert evidence does not support it but, on the contrary, is opposed to it. Conditions said to be essential to such combustion were non-existent. The car had been freely ventilated during the day and there was an entire absence of heat, especially at night. There were many other possible causes for the fire, most of which were disassociated from any negligence of defendant. It would be just as reasonable to infer that the fire was caused by sparks from a passing locomotive without proof that any train passed there that night, that thieves broke in and set the fire; that reckless tramps did it, or that some vengeful enemy of defendant did it, as it would be to conclude that spontaneous combustion did it under conditions which plaintiffs' own experts pronounce unfavorable. Negligence is a positive wrong that must be proved, not necessarily by direct evidence, but, at least, by circumstances which, if believed to exist, point to the negligent act averred as the only reasonable cause of the event. The jury must not be left by the evidence relied on by the proponent of the proposition of negligence in the position of being compelled to choose between two or more possible causes, for one of which the defendant would be liable, and for the others would not be liable.

We conclude the evidence fails to support any of the charges of negligence and that the learned trial judge erred in sending the case to the jury. The judgment is reversed. All concur.