Sails v. Funk.

JAMES  SAILS,  Respondent,  v.  J.  J.  FUNK,
Appellant.

Springfield Court of Appeals, December 11, 1913.

1. **DEFECT OF PARTIES: Objection to: How Raised.** Where defendant failed to raise the objection of a defect of parties either by demurrer or by answer *held*, that the court properly refused to permit him to amend his answer to allege such defect at the close of the plaintiff's evidence.

2. ————: **Necessary and Proper Parties.** Action to recover expenses laid out in an equitable proceeding to quiet title, such proceeding having been necessitated by the destruction by defendant of a deed left in his keeping. Plaintiff's wife, though a part owner of the property, bore no part of the expense in the suit to quiet title. *Held*, that she was neither a necessary nor a proper party plaintiff.

3. **BAILOR AND BAILEE: Gratuitous Bailment: Duty of Bailee.** Where a deed was left with defendant for keeping without reward, it was his duty as such bailee to exercise reasonable care in its safe-keeping. And failing to produce such deed to the bailor, to excuse himself the bailee must show that it was lost without his negligence or fault.

4. **VERDICT: Evidence to Support: Appellate Court Will not Disturb.** The appellate court will not disturb a verdict where there is substantial evidence to support it.

Appeal from Jasper County Circuit Court, Division
Number One.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*M. R. Lively* for appellant.

(1) Where the action for tort is brought for two interested complainants suffering alike the injury complained of, they must join as plaintiffs. Hollow Brake Beam Co. v. Blakewell, 224 Mo. 203; Lowenberg v. De Voigne, 145 Mo. App. 710; Secs. 1729, 1733, R. S. 1909.

(2) Amendments are favored, and the amendment offered to be made by the defendant should have been permitted by the court, even if the court fixed the terms. (3) The demurrer should have been sustained. Lowenberg v. De Voigne, 145 Mo. App. 710; Street Railway v. Express Co., 145 Mo. App. 371; Hollow Brake Beam Co. v. Blakewell, 224 Mo. 203. (4) The defect of failing to state facts sufficient to constitute a cause of action was never waived, and is present here, and was raised by the defendant's instruction in the nature of a demurrer at the close of plaintiff's testimony. Judd v. Walker, 215 Mo. 312; Crome v. Telephone Co., 131 Mo. App. 313.

*W. R. Shuck* and *R. M. Sheppard* for respondent.

(1) Appellant contends that this suit was not prosecuted in the name of all of the parties in interest; that all of the parties in interest had not been made parties plaintiff. This contention of the appellants is wrong for two reasons: First: The respondent is the only person who spent any money in perfecting the title to the real estate in question or entered into any obligation to spend any; the wife of the plaintiff did not spend any money in perfecting the title to the real estate in question and did not obligate herself to spend any. Second: If she had spent any money in perfecting the title or obligated herself to spend any she could not recover from Funk for any money she expended or obligated herself to expend because the evidence shows that she assisted in securing the second deed from Kerchner and wife and consented to the destruction of the first deed.

ROBERTSON, P. J.—Plaintiff sued the defendant in the circuit court alleging that in April, 1911, he, his wife and his brother-in-law purchased from John A. Kerchner a tract of land in Jasper county and

that said Kerchner executed and delivered to those three a general warranty deed therefor; that the purchasers did not record the deed but deposited it with the defendant; that the plaintiff afterwards purchased his brother-in-law's interest in said property; that in March, 1912, the defendant fraudulently procured from said Kerchner and wife a second deed conveying said property to the father-in-law of plaintiff and that the defendant, without the knowledge or consent of the plaintiff, destroyed the first deed; that the plaintiff after learning of the execution and delivery of the second deed to his father-in-law caused to be brought in the circuit court of Jasper county a suit in equity to quiet the title to said property and obtained a decree in said court vesting the title in plaintiff and his wife, and that as a result of said litigation he was compelled to and did employ counsel in order to perfect the title to said property and to pay out money in said cause, and costs, and that he had lost time in attending to said litigation, for all of which he asked damages in the sum of five hundred dollars.

The defendant appeared and answered by a general denial. A trial was had to the jury and resulted in a verdict for one hundred dollars in favor of the plaintiff, and the defendant has appealed.

The testimony discloses that the property, which was encumbered at the time of the purchase, was paid for by the plaintiff's wife conveying to Kerchner forty acres of land in Arkansas, which constituted the sole consideration for the equity in the Jasper county land. It also appears that the land was purchased for the purpose of conducting a retail grocery business in the store building thereon.

Immediately upon the purchase of the property the plaintiff paid some interest on the encumbrance then past due and made some improvements in the buildings located on the land. Three or four months

after the original purchase the plaintiff bought his brother-in-law's interest in the property, paying the consideration therefor in cash and notes. In April or May, 1912, the plaintiff first learned that the original deed had been destroyed and a new one executed and delivered, whereupon he immediately interviewed the defendant ascertaining what he could about the transaction, but getting little information. He says that the defendant first told him that he could not find the first deed and later that he had destroyed it long before the plaintiff's first inquiry about it. The plaintiff, after consulting with his wife, then wrote to his father-in-law about the transaction, requesting that the premises be reconveyed to him and his wife, but receiving no satisfactory answer he instituted the equity suit referred to in his petition. That suit was brought against Kerchner, plaintiff's brother-in-law and his father-in-law, and resulted in a decree vesting the title to the premises in plaintiff and his wife. Upon the eve of the trial of the former suit, the plaintiff's brother-in-law and father-in-law delivered to the plaintiff a quitclaim deed conveying the property to the plaintiff and his wife; but if the plaintiff and his wife had then dismissed their case they would have had no instrument showing a transfer from Kerchner, because, so far as the evidence discloses, the grantors in the quitclaim deed did not tender the deed from Kerchner to the father-in-law and it was never recorded, and there is some evidence that it was destroyed.

The defendant's testimony was to the effect that the plaintiff's wife, at the time of the execution of the first deed, was an employee in defendant's office and kept in his safe a package of her private papers; that she put the first deed in question in a package and sealed it up and placed it in the safe, as it was her custom to do, and that thereafter she advised defend-

ant that she wanted a deed made to her father because
they were so far behind on the payments due on the
encumbrance that foreclosure was threatened, and she,
therefore, wanted to deed it to her father, or have it
deeded to him, and he would advance the interest and
save their home. At the request of plaintiff's wife, he
says he saw Kerchner and inquired if he would make
a new deed. Defendant says that he advised her it
would be the easiest way and would save recording
one deed, which would cost ninety cents, and the mak-
ing of one entry on the abstract, which would cost fifty
cents, and told her she could get a deed direct from
Kerchner and the other deed, not being recorded, could
be destroyed. The defendant thereupon saw Kerch-
ner, who testified that he agreed to execute a new deed
upon the assurance of the defendant that it was en-
tirely satisfactory to the grantees named in the first
deed. The defendant admits that he destroyed the old
deed without the consent of the plaintiff and admits
that he did not talk to the plaintiff until a long time
after this transaction. He also admits that he paid
Kerchner two dollars for executing this new deed, but
says he simply advanced it for plaintiff's wife, al-
though he testifies that he has never been repaid.
Kerchner testified that the defendant told him he was
paying it out of his own pocket. The defendant further
testified that he knew of the equity suit to quiet the
title some time before the trial and wrote to the wife
of plaintiff about it. The defendant, in undertaking
to explain why he did not advise the plaintiff that the
first deed was destroyed when plaintiff first inquired
about it, states that at first he thought the plaintiff
was asking about the second deed, yet the defendant
had previously testified that the second deed had been
delivered to the plaintiff's wife and the defendant
must, therefore, have known that he did not have that
deed. Later, he seeks to explain this apparent incon-

sistency, but it was for the jury to determine which of his statements was correct.

At the close of testimony the defendant requested the court to instruct the jury to return a verdict for him, which was refused.

At the request of the plaintiff the court instructed the jury that if the first deed was deposited with the defendant for safe-keeping and afterwards he, without the knowledge or consent of the plaintiff, destroyed said deed and procured a second deed to said property from said Kerchner and wife conveying said property to plaintiff's father-in-law, and that said deed was delivered to him, and that the defendant destroyed the first deed and procured the second deed for the purpose of defrauding the plaintiff out of his interest in said property, and if it became necessary for the plaintiff to institute the suit in the circuit court for the purpose of having the title to said property vested in himself and wife free and clear of the claims of Kerchner and the brother-in-law and father-in-law, then they should find the issues in favor of the plaintiff and assess his damages at such sum as from the evidence it appeared it was necessary for the plaintiff to expend and obligate himself to expend in perfecting said title, not exceeding the amount claimed in the petition.

At the request of the defendant the court instructed the jury that even though it might appear from the evidence that the defendant did destroy the first deed, yet if he acted in good faith therein and in soliciting the execution of the second deed, the verdict must be for the defendant.

At the close of the testimony offered in behalf of the plaintiff the defendant asked leave to amend his answer so as to charge that "the parties plaintiff were not properly joined and that there was a defect of parties plaintiff in the suit." The permission to

amend at that time, as stated by the attorney for the defendant, was asked for the reason that he had not sooner been able to discover this condition. The court thereupon inquired of the defendant who it was claimed were the necessary parties plaintiff, which elicited the answer, "We claim that Mrs. Sails is one." The court refused to permit the amendment and the defendant excepted. The defendant is now here insisting that the court erred in refusing to permit the amendment and insists that by reason of the fact of the nonjoinder of plaintiff's wife there was no cause of action stated.

There are several other minor objections as to the sufficiency of the petition which, when followed to their final analysis, are referable to the alleged defect of parties plaintiff.

The defendant offered the plaintiff's wife as a witness who was first excluded because she was not a competent witness, and the defendant thereupon offered to prove certain facts by her which the court properly held were not material and also sustained the objection as to her competency. Later, however, she did testify as a witness in behalf of the defendant upon numerous material questions about which she was asked, and upon the court sustaining objections as to her competency made by plaintiff, the defendant offered to prove certain facts, which offer the court properly refused as they were wholly immaterial. The defendant here assigns error solely on the ruling as to the competency of the plaintiff's wife and does not complain as to the ruling on the question as to the immateriality of the testimony offered, and as we must sustain the court on this ruling as to materiality, it is unnecessary to consider the questions as to the competency of the wife as a witness.

There are, to our minds, but two propositions involved here and these are, first, whether or not the

court erred in refusing to permit the proposed amendment, and, second, whether or not there is sufficient testimony in this case to uphold the verdict.

That the court committed no error in refusing to permit the amendment is so evident from a reading of sections 1800 and 1804, Revised Statutes 1909, that it seems useless to cite the numberless authorities so holding. Section 1800 provides for raising the objection of a defect of parties plaintiff by demurrer when it is apparent upon the face of the petition, and section 1804 provides that if such defect does not appear upon the face of the petition the objection may be taken by answer and if not so taken the defendant is deemed to have waived the same. We are discussing only the right of the defendant to amend his answer and are not deciding that there was no other way to reach the point in view. We are, however, of the opinion that plaintiff's wife was not a necessary or proper party to this suit. She paid no part of the expenses of the equity suit and has no claim against the defendant jointly with her husband, or otherwise, in the subject-matter involved here.

Upon the second proposition, it is clear that the court did not commit any error in refusing to instruct the jury to find the issues in favor of the defendant. The instructions which were given were sufficiently liberal in behalf of the defendant to foreclose any grounds of complaint on his part. While it is true the defendant was in the nature of a bailee of the first deed without reward, yet he is required to exercise reasonable care in its safe-keeping and to excuse his failure to produce the deed to the plaintiff upon demand therefor it must appear that "it was lost without defendant's negligence or fault." [Huxley v. Hartzell, 44 Mo. 370, 373.] It was the duty of the defendant in this case to take the same care of the deed entrusted to him by the plaintiff as an ordinarily

careful and prudent person in his situation would bestow on his own property. [Levi & Co. v. Railroad, 157 Mo. App. 536, 543, 138 S. W. 699; Stanard Milling Co. v. Transit Co., 122 Mo. 258, 274, 26 S. W. 704.]

The instructions in the case at bar went further and required the jury to find that the defendant acted fraudulently and the instruction given in behalf of the defendant required that the jury should find that he acted in bad faith in destroying the first deed and soliciting the execution of the second. The jury resolved both questions of fraud and good faith against the defendant, and, as there was testimony tending to support these proposition, or at least the question of gross negligence, we are powerless to destroy the verdict of the jury.

The judgment is affirmed. *Sturgis, J.,* concurs. *Farrington, J.,* concurs.