THE ACME HARVESTER COMPANY v. ED. F. MADDEN.

No. 113.

1. FINDINGS — *If Insufficient, to Be Set Aside.* When the findings of the jury upon material facts are not sustained by the evidence they should be set aside, upon proper application being made therefor.

2. AGENCY — *Damages Against Principal — Evidence.* Before an agent who was selling on commission certain harvesting machines can recover damages for the failure of his principal to fill his orders for certain machines, he must show that the orders were for sales made to persons to whom, by the contract of agency, he was authorized to sell.

3. ————— *Declarations of Agent Incompetent.* The declarations of an agent are not admissible against his principal when they merely relate to a past transaction.

MEMORANDUM.—Error from Ellis district court; LEE MONROE, judge. Action by The Acme Harvester Company against Ed. F. Madden to recover on an alleged guaranty of payment of certain notes. Judgment for defendant. Plaintiff brings the case to this court. Reversed. The opinion herein, filed October 9, 1896, states the material facts.

*H. G. Laing*, for plaintiff in error.

*David Rathbone*, and *A. J. Bryant*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: The defendant in error, Ed. F. Madden, was the agent for the plaintiff in error for the sale of the "Hodges" steel header in certain territory in this state for the years 1891 and 1892. Written contracts between the Acme Harvester Company, as party of the first part, and Madden, as party of the second part, defined the terms of the agreement, fixed the prices at which the machines should be sold, the commission to be received by the agent on the sales made by him, and specified the conditions under which sales might be made. Among other things, said contracts contained the following :

"And the said party of the first part hereby agrees to furnish the machines and extras herein named to the said party of the second part as fast as they are ordered, to the extent of their ability to do so ; provided, however, if from any cause whatever they are unable to furnish the machines ordered, or any extras thereto, they shall not be liable for any damages whatever. And the party of the first part agrees to pay a commission of 20 per cent. of the list price of machines herein named, at which machines are to be sold. . . . The party of the first part reserves the right to select such notes as they see fit out of the time sales and turn them over to the party of the second part, at time of settlement, or any time before that, as they may elect, for all commissions due the second party on such sales."

"4. To grant credit to such persons only as are of well-known responsibility and of good reputation as to the payment of their debts, and against whom, af-

ter allowing for homestead and all lawful exemptions, collection of the amount can be made by judgment and execution ; and all notes to bear truthful property statements showing the party to be worthy of credit given ; or to take chattel mortgage on machine, and additional property valued at double the amount of indebtedness."

"7. The party of the second part waiving demand, protest, and notice of protest, hereby guarantees the payment of all notes which may be taken for Acme Harvester Company's goods not in accordance with the provisions and conditions of this contract ; and if taken not in accordance therewith, as to financial ability, further agrees to sign Acme Harvester Company's printed form of guaranty on the back of said notes when requested so to do."

"9. The party of the second part agrees to be accountable to the party of the first part for any loss or expense resulting from any deviation from this agreement ; . . . and further agrees, that the acceptance of any note by the party of the first part, under the provisions of this contract, not made in compliance with it, shall not be deemed as a waiver by the party of the first part of any of its rights under this contract."

During said years the defendant in error sold certain machines, for which the notes of the several purchasers were taken and transmitted to the company. This action was commenced January 20, 1894, by said company against Madden, to recover, on his guaranty of payment, the amount of certain of said notes, alleging that they had been taken in payment for headers purchased by the makers, respectively, from said Madden ; that the makers thereof were not persons of well-known responsibility and good reputation as to the payment of their debts ; that they were not persons against whom, after allowing for homestead and all lawful exemptions, collection of said notes could have been made at the time said notes were taken,

... since; that said notes did not bear truthful property statements showing the respective makers to be worthy of the credit given them.   The defendant answered, joining issue upon the allegations of the plaintiff's petition, and also asking affirmative relief by alleging certain matters on which he claimed to be entitled to recover against the plaintiff.   One of these matters was, that the plaintiff did not furnish machines ordered by the defendant, to the extent of its ability to do so, in said years, but failed and refused, without legal excuse, to fill his orders therefor, to his damage in a large amount.   On a trial had by a jury, judgment was rendered in favor of the defendant for $134.50.

The main contention on the part of the plaintiff in error is that the verdict of the jury is not sustained by the evidence.   Numerous objections are made to the ruling of the court in admitting and refusing evidence, and in the giving and refusing of instructions to the jury.   A proper consideration of some of the questions thus raised requires the careful examination of a typewritten record of over 400 pages. The labor thus involved might have been greatly lessened had the rules of this court been complied with in the preparation of the brief for plaintiff in error.   As the instructions and evidence concerning which objections are made have not been briefed as the rule requires, we shall not attempt their full consideration.   We have, however, carefully read the evidence contained in the record, and are clearly of the opinion that it does not authorize the judgment rendered.   The notes, copies of which were attached to the petition, all purported to contain property statements of their respective makers.   The plaintiff claims that these statements were untrue, and that

the makers were not persons of the class to which the defendant was authorized to grant credit. No chattel-mortgage security was taken securing any of the notes. The special findings show that the plaintiff was allowed for four of the notes sued upon; but, as to the others, the jury found in favor of the defendant. As to most of the notes the evidence was conflicting, and the verdict of the jury is now conclusive. As to some, however, the testimony of the makers of the notes was the only evidence introduced, and clearly shows that their property statements were not true.

It is claimed by the defendant in error that the petition presented no issue as to the truthfulness of the property statements; that it at most alleged that no property statement was, in fact, made in connection with any of said notes. The language of the petition is, "Nor did each or any of said notes bear a truthful property statement showing the maker to be worthy of credit so given by the said defendant." This, counsel contends, must be construed as a denial of the fact that said notes bore any property statements whatever, and should not be taken as equivalent to an allegation that property statements were made which were not true. While we think the position is open to the objection made by counsel, yet it seems to have been treated by the court, and evidence was introduced by both parties, the same as if the allegation had been made that certain property statements had been made but that they were untrue. The record shows that the defendant made a general objection to the introduction of the statements in evidence, but it does not definitely appear that this particular ground of objection was brought to the attention of the trial court. In this particular we think the petition should be amended on a retrial of the case.

Stronger grounds for reversal exist upon the counter-claim of the defendant. There is nothing in the evidence tending to show that the company did not act in entire good faith in the filling of defendant's orders. On the contrary, the evidence shows that there was, during the years in question, an unusual demand for headers, which exceeded the ability of the company to supply. It was proper, under such circumstances, that the company should treat all its agents with equal fairness, and that unreasonable discriminations should not be made in the filling of their orders. The contract expressly provided that the company was bound to fill orders only "to the extent of their ability to do so," and "if from any cause whatever they are unable to furnish the machines, or any extras thereto, they shall not be liable for any damages whatever." No cause for the failure of the company to supply the defendant with all the machines ordered is apparent, other than such unusual demand. This alone, under the evidence, would create no liability. Again, before the defendant could recover because of the failure of the plaintiff to fill any order, he must show that such order was for a machine sold to a person to whom he was authorized to sell by the terms of the contract; that is, that the proposed purchaser was a person of well-known responsibility and of good reputation as to the payment of his debts, and against whom, after allowing for homestead and for all lawful exemptions, collection of the amount could have been made by judgment and execution. Such showing was not made. On the contrary, the defendant was unable to state upon the trial, with few exceptions, who the proposed purchasers were.

There was no evidence tending to show who they were, where they lived, or what their financial con-

dition was. The only evidence introduced on the subject was the testimony of the defendant, who, speaking in a general way of the 100 unfilled orders, said that they were given by persons of good reputation for the payment of their debts, and who were financially able to pay for the machines. This testimony was objected to, and should not have been admitted in this wholesale manner. The error is especially prejudicial in view of the fact that no information was given of the names of more than a small part of the persons who gave the orders, and no opportunity was afforded the plaintiff to controvert the evidence of the defendant.

Complaint is also made of the rulings of the court in admitting evidence of the statements of other agents of the plaintiff with reference to past transactions or transactions with which they were not shown to have been personally connected. The declarations of an agent within the scope of his authority are admissible when made in connection with a transaction for his principal, as a part thereof. But his declarations with reference to a past transaction are not admissible against the principal. (*Swenson v. Aultman*, 14 Kan. 273.)

We perceive no substantial error in the instructions of the court. We think they very fully and fairly presented to the jury the issues and the rules of law applicable to the case.

The judgment will be reversed, and the case remanded for new trial.

All the Judges concurring.