12136

WILLIAMS v. WESTERN UNION TELEGRAPH CO.

(136 S. E., 218)

1. PRINCIPAL AND AGENT—AGENT CAN BIND PRINCIPAL WHILE ACTING WITHIN HIS AUTHORITY.—An agent can bind his principal while acting within the scope of his authority.

2. EVIDENCE—AGENT'S NARRATION OF PAST EVENTS, NOT PART OF RES
GESTAE, ARE NOT BINDING ON PRINCIPAL.—Agent's declarations,
which·are mere narration of past events and do not form part of
*res gestae,* are not binding on principal.

3. EVIDENCE—AGENT'S STATEMENTS WITHIN SCOPE OF AGENCY WHILE
SOMETHING REMAINS TO BE DONE ARE COMPETENT.—As long as any-
thing remains to be done, statements of agent are competent as
part of *res gestae,* if made within scope of his agency.

4. PRINCIPAL AND AGENT—WHETHER MATTER IS WITHIN SCOPE OF
AGENT'S EMPLOYMENT IS USUALLY QUESTION FOR JURY.—When there
is any question about whether matter is within scope of agent's em-
ployment at time of act done, it is usually question for jury.

5. EVIDENCE—STATEMENTS OF TELEGRAPH AGENT TO SENDER, FEW DAYS
AFTER TAKING UNDELIVERED MESSAGE, HELD COMPETENT.—In action
against telegraph company for failure to deliver death message, tes-
timony of sender relative to statements made by telegraph agent
four or five days after giving message to agent for transmission
was competent.

6. TELEGRAPHS AND TELEPHONES—PUNITIVE DAMAGES AND DAMAGES FOR
MENTAL ANGUISH ARE NOT RECOVERABLE FOR FAILURE TO DELIVER IN-
TERSTATE MESSAGE.—Punitive damages and damages for mental an-
guish are not recoverable against telegraph company for failure
to deliver an interstate message

7. TELEGRAPHS AND TELEPHONES—WHETHER TELEGRAPH MESSAGE WAS
SENT DIRECTLY TO DELIVERY PLACE WITHIN STATE, OR RELAYED
THROUGH ANOTHER STATE HELD FOR JURY.—Evidence *held* for jury
on question of whether telegraph message was sent directly to
place of delivery within State, or was relayed through point without
State, so as to constitute interstate commerce.

8. TELEGRAPHS AND TELEPHONES—TELEGRAPH COMPANY MUST SHOW
CONVINCING REASON FOR ROUTING MESSAGE THROUGH POINT OUTSIDE
STATE.—Where telegraph company takes message within state to be
delivered to a point within state with which it has direct commu-
nication, and especially when message has to go through that point
to reach point beyond state, it must show very convincing reasons
for necessity to take message beyond limits of state in action con-
cerning such contract.

9. APPEAL AND ERROR—SUPREME COURT WILL NOT INTERFERE WITH
JURY'S VERDICT SUSTAINED BY TESTIMONY—Supreme Court will not
interfere with jury's verdict, if there is any testimony to sustain it.

10. TELEGRAPHS AND TELEPHONES—EVIDENCE RESPECTING PUNITIVE DAM-
AGES FOR FAILURE TO DELIVER DEATH MESSAGE HELD FOR JURY.— Evi-
dence on question of punitive damages for failure of telegraph
company to deliver death message *held* for jury.

Before WILSON, J., Hampton, February, 1925. Affirmed.

Action by Jones Williams against the Western Union Telegraph Company. Judgment for plaintiff and defendant appeals.

*Messrs. Francis R. Stark,* and *Nelson & Mullins,* for appellant, cite: *Declarations of agent not part of res gestæ and not made within scope of his employment not admissible to bind principal:* 126 S. C., 1; 119 S. E., 776; 117 S. C., 44; 108 S. E., 363; 84 S. C., 190; 65 S. E., 1047; 62 S. C., 129; 40 S. E., 111; 53 S. C., 448; 31 S. E., 334; 69 A. S. R., 874; 27 S. C., 64; 2 S. E., 837; 19 S. C., 354; 17 S. C., 519; 5 S. C., 358; 4 S. C., 153; 119 U. S., 99; 30 L. Ed., 299; 7 So., 419; 4 So., 844; 27 Iowa, 433; 1 Am. Rep., 285; 43 S. W., 468; 53 S. W., 686; 42 S. W., 119; 10 R. C. L., 990; Greenleaf on Ev. (15th Ed.), Sec. 114; Mecham on Agency, Sec. 714; 2 Wigmore on Ev., Sec. 1078. *Federal law applicable to facts at bar; telegram interstate commerce:* 119 S. C., 175; 112 S. E., 117; 115 S. C., 520; 106 S. E., 507; 110 S. C., 169; 92 S. E., 248; 251 U. S., 315; 64 L. Ed., 281; 254 U. S., 17; 65 L. Ed., 104. *Long and unexplained delay in delivery of telegram evidence of wilfulness:* 84 S. C., 482; 65 S. C., 99.

*Mr. George Warren,* for respondent, cites: *Testimony of witness Williams, admissible:* 51 S. E., 697. *"Res gestæ,"* 34 Cyc., 1642; 48 Ga., 607. *Declarations of agent bind principal if made within scope of agency as to matter then depending:* 79 S. C., 452; 60 S. E., 963; 79 S. C., 288; 60 S. E., 677; 72 S. C., 124; 51 S. E., 540; 65 S. C., 156; 43 S. E., 388; 56 S. C., 144; 34 S. E., 80; 41 S. C., 325; 19 S. E., 675. *Declaration of agent, though four days later, admissible as to sending of telegram:* 84 S. C., 190; 65 S. E., 1047; 27 L. R. A. (N. S.), 435; 137 A. S. R., 839; 64 S. E., 233. *Declarations of agent within scope of agency,*

*so long as anything remains to be done, admissible:* 12 S. E., 1017; 128 Mass., 221; 112 Mass., 455; 16 Cyc., 1922. *Evidence of long delay in delivery of telegram, without evidence of any real attempt to deliver it, raises question of wilfulness for jury:* 61 S. E., 258; 80 S. C., 207; 60 S. E., 697; 79 S. C., 160; 60 S. E., 435; 77 S. C., 44; 58 S. E., 9; 76 S. C., 529; 57 S. E., 543; 73 S. C., 385; 53 S. E., 639; 51 S. E., 697.

January 6, 1927.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE PURDY.

In this action the plaintiff sought to recover for mental anguish and punitive damages on account of the failure to deliver a telegram from Arthur Williams, a nephew of the plaintiff, at Beldoc, S. C., addressed to the plaintiff at Brunson, S. C., announcing the death of plaintiff's brother. The case was tried before Judge Wilson and a jury at Hampton, S. C., on February 9, 1925, resulting in a general verdict in favor of the plaintiff for the sum of $900.

The message out of which the cause of action grew was: "Father died this morning. Come"—and was sent by Arthur Williams and prepaid, and was directed to Jones Williams, Brunson, S. C., and it is charged that the defendant willfully, wantonly, recklessly, carelessly, negligently, and with a total disregard of the rights of plaintiff failed to transmit and deliver the message, and that it has never been delivered. If it had been promptly transmitted, the plaintiff would have reached Beldoc on the same day, and would have arrived in time to have been with his relatives in their time of trouble, and would have been able to assist in the burial of his brother.

Damage is alleged in the sum of $2,000. A general denial was interposed and several special defenses were set up. The defendant claims in its answer that, in so far as it is sought to set up a cause of action for punitive damages,

based on a willful tort, the same must fail, for that the established, necessary, and customary routing of the message from Beldoc to Brunson necessitated the relaying of the message through the defendant's office in Augusta, in the State of Georgia, and it was there relayed to Brunson in accordance with such established, necessary, and customary routing, and that the message, having in transit passed beyond the State of South Carolina into Georgia, became and was interstate commerce. The defendant further pleads the Act of Congress of June 8, 1910, 36 Stat., 539, regulating interstate communication by telegraph, placing it beyond State regulation or interference, on account whereof no recovery can be had for punitive damages, in the absence of proof that the corporation personally directed, authorized, ratified, or approved such tort, or participated in it, and that the attempt to recover punitive damages under the laws and policies of South Carolina is null and void, because in violation of Article 1, Section 8, Subdivision 3, of the Constitution of the United States, conferring on Congress power to regulate commerce among the States, and further alleges by way of defense that, if the Act of May 13, 1919 (31 St. at Large, p. 651), be construed so as to require the transmission of the message to be regarded as an intrastate transaction, then such statute is unconstitutional, null, and void, in contravention of the article, section, and subdivision of the Constituiton of the United States above set forth.

During the examination of Arthur Williams, he was asked if the agent at Bedoc made any statement to him regarding a telegram which was transmitted from that place. This testimony was objected to by counsel for the defendant, upon the ground that any statement made after the telegram was sent, and after the event, does not form part of the *res gestæ,* and is not binding on the defendant. Objection was made to any declaration at any subsequent time and that a subsequent declaration made two or three days after could not be part of the *res gestæ.* These objections were over-

ruled, and witness was permitted to testify that after four or five days he went back to Mr. Smith, the agent at Beldoc, who told him, referring to the message, "It was sent straight to Brunson." Other witnesses were examined, and at the conclusion of the testimony a motion was made for a directed verdict as to punitive damages, which motion was refused. After the rendition of the verdict, a motion was made for a new trial, which was refused.

It appears that the sender of the message, Arthur Williams, told the agent at Beldoc, when he paid the charge for sending the message, that, if there was any extra charge to be paid to deliver it, he would pay it, and gave as his reason that he did not know exactly where his uncle lived at Brunson, but knew that he lived in or around and within a mile of Brunson. He was on his way to the station to send the message, when he came upon the agent who took the message and wrote it out for him, together with another message to be sent to another member of the family. The message to the other member of the family was likewise sent through Augusta and relayed from there, and was delivered.

The plaintiff lived about one mile from Brunson, and was not very well known there. It seems that he was a sharecropper, and was accustomed to move about from place to place, and had been in Brunson only a short time. The sender of the message did not know with any degree of certainty just where he lived. It appeared also that the plaintiff knew quite a number of people in the town of Brunson, among them the people he had been trading with there, and was accustomed to go to Brunson every Saturday evening, and sometimes during the week, and was known there as Jones Williams. Mr. Priester, the man for whom he worked, lived just across the railroad from the Western Union telegraph office, and plaintiff was frequently at his his house. He never received the telegram in question, but was told of his brother's death by Mr. Priester.

The message was sent through Brunson to Augusta, and was there relayed back to Brunson. The agent at Brunson

was also express agent and telegraph operator. The message was received at Beldoc at 8:20, was sent at 8:28, and was received by Mr. Zeigler, the agent at Brunson, at 8:58 a. m. He had known a Mr. Jones Williams ever since he had been at Brunson, and Mr. Williams had gotten express and freight and telegrams at Brunson, and, as the mail was going out about 10 o'clock, he put the message in an envelope and addressed it to Mr. Jones Williams, and, he thinks, added, "R. F. D." The Mr. Jones Williams he knew lived about eight or nine miles from Brunson. He never heard of the plaintiff until about a week or ten days after the telegram was received. The person to whom he mailed the telegram owns a large farm, and is known by everbody around Brunson, and, had any one inquired about Jones Williams about Brunson, this might have been the person to whom he would have sent him. The Jones Williams to whom the telegram was mailed is W. J. Williams. He found the message in his mail box with other letters, opened and read it, and put it back in the box, so it should go back the next day, realizing that the message was not for him. He did not know what became of the message. He never heard of the other Jones Williams until the time of the trial.

The plaintiff has a brother named J. W. Williams, who lives at Barnwell, and a duplicate of this message was sent to him, by Arthur Williams, at the time this message was sent. That message was put in evidence. The message designed for the plaintiff was written on a blank piece of paper and was in evidence. As relayed from Augusta, it could not be found, due to the fact that, as was stated in behalf of the defendant, it was destroyed after the expiration of six months, and that it was not discovered, until the case was being prepared for trial, that the company had sent in error a message which was relayed to J. W. Williams, and on this message the word "Relay" appears.

While the exceptions are ten in number, the subjects

to which they relate may be grouped under a few subdivisions, viz.:

(1) Exceptions 1 and 2 allege error in admitting the testimony of Arthur Williams as not being part of the *res gestæ,* and in not granting the motion for a new trial for error in admitting such testimony.

(2) That there was error in refusing to direct a verdict for the defendant on the question of punitive damages, in that it appeared that no other damage has been alleged or proven other than mental anguish, and, it having been shown that the message was sent to Georgia and there relayed through Augusta, under the federal law there could be no recovery for mental anguish or punitive damages, and in that there was no testimony warranting a verdict for punitive damages, even if the message had been an intrastate message. These questions are raised in exceptions 3 and 4 and the same question is raised by Exception 9, which alleges error in charging the jury that the jury could take into consideration distress of mind and mental anguish.

(3) Error is alleged in that, since the message was relayed through August, Ga., a recovery for mental anguish, in the absence of bodily injury, cannot be applied to this message, and there could be no recovery on account of mental anguish or suffering, and that a refusal to so charge was a violation of the defendant's rights under Article 1, Section 8, Subdivision 3, of the Constitution of the United States and the Acts of Congress thereunder, particularly the Act approved June 18, 1910, and in refusing to charge that there could be no recovery for actual or punitive damages on account of mental anguish under the facts of the case, and refusal to so charge was in violation of the Constitution and Act of Congress above referred to. These questions are raised in exceptions 5 and 6.

(4) That there was error in not directing a verdict for the defendant, and in submitting the question to the jury

as to whether it was an intrastate or interstate message, in that there was no other, conclusion than that the message had been relayed through Augusta, Ga., and that the defendant's rights were thereby violated under the Constitution and Act of Congress above referred to, and it appearing that there had been a *bona fide* and honest effort to deliver the message, and there was no evidence of wantonness, willfulness, or recklessness, the verdict should have been diretced as to punitive damages. These questions are raised in exceptions 7, 8, and 10.

First. As to the issues raised in the first group (exceptions 1 and 2) : It is a recognized principle that an agent can bind his principal while acting within the scope of his authority, and that declarations which are a mere, narration of past events and do not form part of the *res gestæ* are not binding on the principal. Many authorities on this point are cited by the attorneys for the appellant, among them *Petrie v. Railroad Co.,* 27 S. C., 64; 2 S. E., 837. *Garrick v. Railroad,* 53 S. C., 448; 31 S. E., 334; 69 Am. St. Rep., 874. *Templeton v. Railroad Co.,* 117 S. C., 44; 108 S. E., 363.

The difficulty does not lie in the statement of the law, but in its application. If the transaction were deemed to have been closed at the time that the witness Williams delivered the message to be sent, then, no matter what took place in reference ot it, if Williams ceased, upon receiving the message, to represent the principal, then there would have been no one representing the appellant, and no information could have been obtained concerning the message by which the appellant would have been bound.

We do not consider the application of the *res gestæ* to a case of this kind as confining the matters to so narrow a limit. We prefer to adopt the view that so long as anything remains to be done, the statements of the agent are competent, if made within the scope of his

agency. *Lane v. Boston R. R. Co.,* 112 Mass., 455. *Green v. Boston R. R. Co.,* 128 Mass., 221; 35 Am. Rep., 370. At the time that the inquiry was made by Williams, the telegram had not been delivered, and the matter was pending. In fact, it has never been delivered, and the authorities are abundant that in such cases, statements made would be deemed to be within the scope of the agent's authority. *Meinhard v. Youngblood,* 41 S. C., 325; 19 S. E., 675. *Ragsdale v. Southern Railway,* 72 S. C., 124; 51 S. E., 540.

When there is any question about whether the particular matter is within the scope of the agent's employment at the time of an act done, it is usually a question for the jury. *Tenhet v. A. C. L. R. Co.,* 82 S. C., 465; 64 S. C., 233.

Matters of this kind should be tested, not so much by the closeness of time, but by their causal relation, and the inquiry should relate to the event, rather than to the precise time which has elapsed. *Hall v. State,* 48 Ga., 607. The person of whom inquiry was made by the witness Williams was still the agent of the appellant, and so long as the transaction continued the acts and deeds emanating from it became a part of it, and there was no error on the part of the trial Judge in admitting the testimony of the witness Williams, and exceptions 1 and 2 cannot be sustained.

Second. As to the issues raised under the second group, relating to exceptions 3, 4, and 9: It is well settled that, upon a cause of action for mental anguish and punitive damages, such damages are not recoverable on an interstate message. *Brown v. Telegraph Co.,* 119 S. C., 175; 112 S. E., 117. *Western Union Telegraph Co. v. Speight,* 254 U. S., 17; 41 S. Ct., 11; 65 L. Ed., 104.

The message in question had to pass through Brunson, which was its place of delivery, in order to reach Augusta, Ga. Taking these circumstances into

consideration, and the testimony of Williams concerning what took place between himself and the agent at Beldoc, and other circumstances connected with the case, an issue of fact was raised for the jury as to whether the message was sent directly to Brunson, or was relayed through Augusta, and there was no error in submitting this question to the jury.

The defendant is doing a large business in the State of South Carolina, which should be done, and doubtless is done, at a profit to it. When it enters into an engagment to be performed within this State, it should be governed by the laws of the State, and the contract should be determined by those laws, and this Court does not look with favor on any Act which deprives it of jurisdiction in settling controversies that have arisen under such contracts.

This has no application to contracts entered into to be performed elsewhere; but when a telegraph company takes a message in this State, to be delivered at a point within the State with which it has direct communication, and especially when the message has to go through that point to reach the point beyond the State, there should be the strongest convincing reasons for the necessity to take the message beyond the jurisdiction of this State, when any matter arises concerning the contract.

This, in its inception, was an intrastate message. It was sought to be made an interstate message without the assent or direction of the sender, and the jury may have concluded that it was for the purpose of bringing it under federal jurisdiction, for the purpose of escaping the liability which attached under the laws of South Carolina for failure to perform its duty. If there is any testimony to sustain the verdict, this Court will not interfere with the verdict.

On the question of punitive damages: When the agent at Brunson received the message, it showed on its face that it was a death message, calling for

the diligence which the nature of such a message required. The jury might well come to the conclusion that it was a willful act on the part of the agent in mailing such a message, instead of making inquiries or taking some more effective method of delivering the message. He knew that the mail carrier was going out, and the jury may have concluded that the message should have been intrusted to the carrier, or to some other person, rather than taken the risk of having a death message lodged in a mail box, to be taken out at the convenience of the person to whom it was addressed. The jury knew the surroundings, and were capable of fixing the responsibility of the appellant, under the facts as related in the record. Besides this, it is not disputed that, when the message was received at Beldoc, the agent there was informed by the sender that he did not know where his uncle lived, but that he would bear any expense necessary to the delivery of the message. Taking these facts into consideration, there was no error in submitting the question of punitive damages to the jury, and no error in refusing to set aside the verdict, and these exceptions cannot be sustained.

Third. This grouping relates to errors alleged as set forth in exceptions 5 and 6. Group 4 relates to errors as alleged in exceptions 7, 8, and 10. While these exceptions impute error in different forms from the errors alleged in the other exceptions hereinbefore treated of, the disposition of the other exceptions necessarily involves the settling of the issues raised by these exceptions against the contentions of the appellant, and the exceptions set forth in groups 3 and 4 cannot be sustained.

The exceptions are all overruled, and the judgment is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE, and STABLER concur.