### 12461

MILLER v. EAGLE STAR & BRITISH DOMINIONS INSUR-
ANCE COMPANY, LIMITED, OF LONDON, ENGLAND,
UNITED STATES BRANCH, NEW YORK

(143 S. E., 663)

1. INSURANCE—AGENT'S STATEMENT OF BELIEF FIRE LOSS WILL BE PAID IS NOT WAIVER OF CHATTEL MORTGAGE PROVISION, BUT AGENT'S KNOWLEDGE ON ISSUANCE OF POLICY IS EVIDENCE OF WAIVER.—A mere statement by insurance company's agent that he hoped and thought insured would be paid for his loss, though there was an outstanding mortgage against insured property at time of fire will not bind company, does not constitute waiver of chattel mortgage clause of policy, and is not evidence to be considered on that question, but testimony that agent had knowledge of existing mortgage when policy was issued is evidence on question of waiver.

2. INSURANCE—EVIDENCE HELD SUFFICIENT TO REQUIRE SUBMISSION OF ISSUE WHETHER COMPANY WAIVED CHATTEL MORTGAGE CLAUSE OF FIRE POLICY.—In action on fire insurance policy, evidence that company's agent had knowledge of chattel mortgage on insured property when policy was issued *held* sufficient to take case to jury on question of company's waiver of policy provision that company would not be liable, if property was incumbered with chattel mortgage, unless otherwise provided by agreement in writing attached to policy.

3. LANDLORD AND TENANT—SHARE CROPPER HAS NO TITLE TO ANY PORTION OF CROP UNTIL DIVISION AND DELIVERY, AND, THEREFORE, CAN SUE ONLY IN EQUITY FOR SETTLEMENT AND DIVISION.—A share cropper has no title to any portion of the crop until there is a division and he has received his share, and he cannot, therefore, maintain action at law for possession of his share, but he has an equitable interest and can maintain action in equity for settlement and division of crop.

4. CHATTEL MORTGAGES—SHARE CROPPER MAY MORTGAGE HIS INTEREST IN CROP, SUBJECT TO LANDLORD'S CLAIM FOR ADVANCES.—An equitable interest in property may be mortgaged, and share cropper

can, therefore, execute mortgage on his interest in crop, subject to any claim that landlord may have against him for advances.

5. CHATTEL MORTGAGES—"CHATTEL MORTGAGE" IS CONVEYANCE OF PRESENT, LEGAL, OR EQUITABLE RIGHT IN PROPERTY, AS SECURITY. —A "chattel mortgage" is a conveyance of some present, legal, or equitable right in personal property, as security for the payment of money, or for the performance of some other act.

6. INSURANCE—INSTRUMENT IN FORM OF CHATTEL MORTGAGE ON CROP SHARES HELD "CHATTEL MORTGAGE," WITHIN CHATTEL MORTGAGE CLAUSE OF FIRE POLICY.—Instrument in form of ordinary chattel mortgage with note attached for specified sum, with interest, covering one-half interest in five acres of tobacco and eight acres of cotton and all interest in four acres of corn to be grown on certain land, also one bay mare horse *held* a chattel mortgage, within fire insurance policy provision that company should not be liable for damage to insured property while incumbered by chattel mortgage, unless otherwise provided by written agreement attached to policy.

7. INSURANCE—CHATTEL MORTGAGE ON HALF INTEREST IN TOBACCO HELD NOT TO COVER ENTIRE TOBACCO CROP TRADED TO MORTGAGOR, AS RESPECTS CHATTEL MORTGAGE PROVISION OF FIRE POLICY.—Chattel mortgage on share cropper's one-half interest in five acres of tobacco and other specified property *held* not to cover entire tobacco crop which was traded to share cropper for his interest in other crops, as respects right to recover for loss thereof under fire insurance policy containing chattel mortgage clause relieving company of liability, unless otherwise provided by writing attached to policy.

Before TOWNSEND, J., Dillon, April, 1926.    Reversed and remanded for new trial.

Action by A. H. Miller against the Eagle, Star & British Dominions Insurance Company, of London, England, United States Branch, New York. Judgment for defendant, and plaintiff appeals.

*Messrs. Joe P. Lane, L. D. Lide,* and *W. C. Moore,* for appellant, cite: *Evidence of waiver:* 52 S. C., 227; 111 S. E., 805; 118 S. E., 817; 80 S. C., 411; 36 S. C., 273; 51 S. C., 186; 14 R. C. L., 1166, Par. 346; 26 C. J., 293, Par. 367. *Equitable lien not a chattel mortgage:* 102 S. C., 499; 103 S. C., 587; 92 S. E., 1049; 110 S. E., 806;

128 S. E., 715; 26 C. J., 185, Par., 226. *Cases distingished:* 117 S. E., 79.

*Messrs. James H. Fowles,* and *Gibson & Muller,* for respondent, cite: *Share cropper has no title to any part of crop until after a division is made:* 102 S. C., 499; 110 S. C., 487; 118 S. C., 245; 123 S. C., 44; 127 S. C., 70; 132 S. C., 254. *Encumbrance here annulled policy:* 68 S. C., 378. *As to waiver:* 123 S. C., 467; 54 S. C., 374; 102 S. C., 115; 124 S. C., 173; 70 S. C., 75; 114 S. C., 183; 68 S. C., 387; 44 S. C., 374.

June 11, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by A. H. Miller, as plaintiff, against the above-named defendant, Eagle, Star & British Dominions Insurance Company, etc., which, for convenience, will be referred to herein as Insurance Company, was commenced in the Court of Common Pleas for Dillon County by service of summons and complaint January 14, 1925, for recovery on a fire insurance policy issued by the defendant to the plaintiff on the 2nd day of August, 1924, to be of force for a period of one year, covering a certain frame building and leaf and scrap tobacco contained in said building, located on the plantation of plaintiff's father in the said County of Dillon. The building and its contents were destroyed by fire August 23, 1924. The defendant paid to the plaintiff the sum of $100 for the loss of the building, but refused to pay for the destruction of the tobacco and offered to return the insurance premium. Thereupon this suit by the plaintiff against the defendant was commenced for the sum of $1,000 for the alleged value of the tobacco thus destroyed, together with interest from the date of the fire.

The defendant, by way of answer, in addition to denying certain allegations of the complaint, interposed an affirmative defense as follows:

"(3) Alleges that the policy of insurance involved in this case contains a provision that, 'unless otherwise provided by agreement in writing added thereto, this Company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage.'

"(4) Alleges that without notice to this defendant, the plaintiff before a loss, incumbered the tobacco covered by the policy by two chattel mortgages to the First National Bank of Dillon."

Upon the trial of the case before his Honor, Judge W. H. Townsend, and a jury, both parties to the cause introduced testimony, at the conclusion of which, on motion of defendant's counsel, his Honor, Judge Townsend, directed a verdict for the defendant. From the judgment entered on the verdict, the plaintiff has appealed to this Court, and asks a reversal of the judgment of the lower Court on the grounds set forth under his exceptions. The appellant's exceptions—four in number—raise the following questions:

"(1) The Court erred in directing a verdict for the defendant, Insurance Company, in that there was evidence of waiver of the mortgage clause of the policy, which should have been submitted to the jury.

"(2) The Court erred in directing a verdict for the defendant, Insurance Company, because the alleged mortgage was a paper given by the plaintiff on his interest in crops to be cultivated by him as a laborer on shares, and was not a chattel mortgage within the meaning of the insurance policy, and, in any view, it did not purport to cover but one-half of the property."

In considering the first question above presented, we shall refer to the testimony adduced at the trial in connection with the provision contained in the policy upon which his Honor, the presiding Judge, based his order directing a verdict for the defendant. The provision in the policy involved under this question is contained in this language:

"Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss. or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this Company shall be liable only for loss or damage to any other property insured hereunder."

The following is an agreed synopsis of the alleged chattel mortgage executed by the plaintiff:

"A. H. Miller to the First National Bank of Dillon, S. C.   Instrument in writing in the form and ordinary shape of chattel mortgage, with note attached.   Dated February 14, 1924, for the sum of $150.00, due October 1, 1924, with discount before and after maturity at 8%.   Said instrument is signed by A. H. Miller, witnessed by F. M. Fitts, probated by notary public, and recorded February 15, 1924, in Book 37, page 373, of Chattel Mortgage Book in the office of the Clerk of Court of Dillon County.

"Description of property follows:

"My one-half interest in five acres of tobacco and eight acres of cotton and all interest in four acres of corn to be grown on the land of E. W. Miller; also one bay mare horse about seven years old, named 'Bell'."

Appellant takes the position, assuming for the sake of argument that this paper so executed by the plaintiff is a chattel mortgage within the purview of the provision of the policy, that the testimony adduced at the trial showed waiver of this provision of the policy.   The plaintiff on this point testified, in referring to conversation had with Mr. Stevens, agent of the Insurance Company who issued the policy:

"Q. Now, Mr. Miller, did you have a conversation with Mr. Stevens, the agent for the Company, along about that time?   A. Yes, sir; had one about every week.

"Q. The Company had sent this gentleman or some gentleman down who had gone into the value of the stuff

and all that, and it was November before you turned it over to me, was it not? A. Some time; I know it was a good while, Mr. Lane.

"Q. Before that time did you go to Mr. Stevens continually about collecting the insurance? A. Yes, sir.

"Q. Did you ask him what was the matter? A. I did.

"Q. What did he tell you? A. He said he thought it was tied up on account of the mortgage, but he said he did not think it would amount to anything. He said he knew there was a mortgage on it, but he never asked me about it, and forgot to put it in. He thought they would settle, he said."

It is true, as contended by respondent, that a mere statement by an agent of the Insurance Company to the effect that he hoped and thought the insured would be paid for his loss, even though there was an outstanding mortgage against the insured property at the time of the fire, will not bind the Company, does not constitute waiver, and is not evidence to be considered on that question; but testimony tending to show that the agent of the Insurance Company had knowledge of an existing mortgage at the time of issuing the policy is evidence on the question of waiver of such provision in the policy. In this connection we call attention to this statement in the testimony of the plaintiff in answer to the question as to what Mr. Stevens, the insurance agent, told the plaintiff:

"He said he knew there was a mortgage on it, but he never asked me about it, and forgot to put it in."

Clearly, this statement on the part of Mr. Stevens had reference to the time the policy was issued, and, according to our view, tends to show that the agent, Mr. Stevens, had knowledge of the existing alleged mortgage at the time of the execution and delivery of the insurance policy, and, under the well-recognized rule, made an issue for the jury on the question of waiver. If the agent of the Insurance Company had knowledge of the existing mortgage at the time the

policy in question was issued, and, notwithstanding such knowledge, issued the policy, then, in that event, the Insurance Company would be held to have waived the provision in the policy pertaining to mortgages.

Respondent calls attention to the fact that the agent, Mr. Stevens, in his testimony, stated that he did not acquire knowledge of the existing chattel mortgage until after the fire. This, in our opinion, simply made a conflict in the testimony and a question for the jury, but furnished no basis for a direction of a verdict. Again, we do not agree with respondent's contention that the letter written by the plaintiff in which the plaintiff stated he did not mention the mortgage when he made application for the policy was decisive on the question and warranted his Honor, the presiding Judge, in directing a verdict for the defendant. This letter, according to our view, was simply additional testimony to be considered by the jury on the question of waiver. We are clearly of the opinion that there was some testimony from which the jury could have reasonably inferred that the agent of the Insurance Company had knowledge of the alleged existing mortgage when the policy in question was issued, and that the issue of waiver should have been submitted to the jury.

As to the second question presented by appellant's exceptions, under which appellant takes the position that the alleged mortgage was not a mortgage for the reason that it was "a paper given by the plaintiff on his interest in crops to be cultivated by him as a laborer on shares within the meaning of the insurance policy," we do not agree with appellant's position. There seems to be no dispute that the plaintiff, in the year 1924, was working for his father as laborer on the share crop basis, and that he was to be paid for his said services one-half of the crops made by him, and that the alleged mortgage was executed by the plaintiff to the First National Bank of Dillon, February 14th of that year, covering the interest of the plaintiff in the crops

to be cultivated by the plaintiff under said laborer's contract; the description of the property being as follows:

"My one-half interest in five acres of tobacco and eight acres of cotton and all interest in four acres of corn to be grown on the land of E. W. Miller; also one bay mare horse about seven years old, named 'Bell'."

As contended by appellant, under the decisions of this Court, a share cropper has no title to any portion of the crop until there is a division and he has received his share of the crop. For this reason, a share cropper cannot maintain an action at law for the possession of his share of the crop, but he has an equitable interest and can maintain an action in equity for a settlement and division of the crop. Further, an equitable interest in property may be mortgaged, and therefore there is nothing to prevent a share cropper from executing a mortgage over his interest in the crop, subject, however, to any claim that the landlord may have against him for advances, and when a division is made and the share of the share cropper has been delivered to him, the mortgagee may enforce his mortgage against the same.

These views are in accord with the decisions of this Court in the following named cases: *Neal v. Suber,* 56 S. C., 302; 33 S. E., 463. *Clerks' Benevolent Union v. Knights of Columbus,* 70 S. C., 547; 50 S. E., 206. *Mayfield v. Bessinger,* 87 S. C., 370; 69 S. E., 673. *Malcolm Mercantile Co. v. Britt,* 102 S. C., 499; 87 S. E., 143. *State v. Sanders,* 110 S. C., 487; 96 S. E., 622. *Lipscomb v. Johnson,* 123 S. C., 44, 115 S. E., 753. *Birt v. Greene,* 127 S. C., 71; 120 S. E., 747.

In this connection, we also call attention to the following definition of "Chattel Mortgages" given in 11 C. J., 398:

"A chattel morgage is a conveyance of some present legal or equitable right in personal property, as security for the

payment of money, or for the performance of some other act."

We therefore agree with the position of respondent 6, 7 on this proposition that the mortgage in question comes within the provision contained in the policy as to incumbrances by chattel mortgages, but we do not agree with respondent as to the contention that the mortgage in question covered all of the property covered by the policy. Before the insurance policy was issued, according to the undisputed testimony, the tobacco crop had been gathered and the plaintiff's father had traded to the plaintiff his interest in the tobacco crop for the interest of the plaintiff in the other crops, cotton, corn, etc., so that at the time the policy was issued the plaintiff had in his possession as owner all of the tobacco that had been raised under the contract between the father and the son, and the mortgagee was, at that time, in a position to enforce his mortgage against the property covered by the mortgage.

The position of the respondent is, although the chattel mortgage given to the bank covered only the interest of the plaintiff in said crop, which was a one-half interest, when the plaintiff received in the trade with his father all of the tobacco that the bank's mortgage was, by operation of law, centered upon all of the tobacco, because the plaintiff had become owner of all of the tobacco. We do not agree with this position. The chattel mortgage in question also covered a bay horse. Suppose, for instance, the plaintiff had traded the bay horse for a white horse, it would hardly be contended that the bank, under the mortgage, could take the white horse in the place of the bay horse. The bank would have to follow the bay horse, and, as we view the case, the mortgage in question, covering only one-half of the tobacco covered by the policy, could not be extended to cover the tobacco which the plaintiff got in a trade with his father, but, certainly, in no event, was the mortgage in question an incumbrance over but one-half of the tobacco which was insured

against fire by the defendant, and the other half was free from incumbrance. Under such conditions there is recognized authority (See 26 C. J., 185) for the position that the alleged mortgage does not fall within the provision contained in the policy as to incumbrances by chattel mortgage. In any event, according to our view, his Honor, the presiding Judge, was in error in directing a verdict for the defendant.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE BLEASE: I concur in the result of the opinion of Mr. Justice Carter reversing the lower Court in this cause. While I find no fault with the authorities cited by Mr. Justice Cothran in his dissenting opinion as to the testimony of the conversation of the agent of the Insurance Company with the plaintiff, I think the case of *Williams v. Western Union Telegraph Co.*, 138 S. C., 281; 136 S. E., 218, is conclusive that the testimony was competent, and that such testimony was sufficient to carry the case to the jury. This Court decided in the *Williams case:*

"When there is any question about whether matter is within scope of agent's employment at time of act done, it is usually question for jury." Syl.

In the case at bar, there is a question whether the alleged statements of the agent to the plaintiff were within the scope of his agency at the time they were made, and under the authority cited this question was one for the jury to determine.

MR. JUSTICE COTHRAN (dissenting): I think that the evidence of a waiver by the Insurance Company of the specific condition in the policy relating to mortgages is exceedingly microscopic, if indeed it deserves to be considered even as a scintilla.

The appellant relies upon an alleged conversation between him and the agent who issued the policy, *after the fire,* to the effect that the agent stated to him that, "he knew there was a mortgage on it, but he never asked about it, and forgot to put it in" the policy. In answer to a question by his counsel, "He did not say when he learned about the mortgage?" the plaintiff replied, *"No sir; he did not say when he learned about it."*

Taken in connection with the statement made by the plaintiff in his letter of October 10, 1924, to the Company, "I did not know it was necessary to notify the agent of mortgage on my tobacco, therefore I did not notify either Mr. Stevens [the agent], or Mr. Adams [for whom Stevens was working], and did not mention the mortgage to them," and of the lack of opportunity or occasion for Stevens to have known of the existence of the mortgage, I do not think that the plaintiff has carried the burden which was upon him, to show notice to the agent, not to speak of the positive testimony of Stevens that he knew nothing of the mortgage until after the fire. But aside from this, the alleged statement of Stevens, which is indefinite as to the time the information reached him, was made *after the fire,* and not within the course of his employment as agent, and cannot be considered as evidence of the fact.

It is sufficiently hard lines upon an insurance company to hold it to a waiver of conditions, the basis of which was known to the agent when the policy was issued, notwithstanding such notice was not communicated to the company. The limit is exceeded when the waiver is sought to be established by the weakest kind of a statement, testified to by the insured, *after the loss has occurred,* when the agent was, as to the particular policy, *functus officio.*

As stated by the Court in *Pearlstine v. Insurance Co.,* 74 S. C., 246; 54 S. E., 372:

"But the rule adopted in this State * * * is that an insurance company cannot avail itself of provisions in the

policy that it should be void if certain facts therein mentioned as essential to the insurance should be found not to exist when these facts were known to the agent not to exist when the policy was issued through him, and the existence of such facts and the knowledge of the agent may be proved by parol."

I do not combat this proposition, though appreciating its hardness, but it is far from establishing the proposition involved in this appeal that the fact of the agent's knowledge may be established *by the declarations of the agent after the fire,* which necessarily terminated his connection with the contract of insurance.

"Declarations of an agent made after the transaction to which his agency related is closed, are not admissible in evidence." *Hartman v. Thompson,* 104 Md., 389; 65 A., 117; 118 Am. St. Rep., 422; 10 Ann. Cas., 92.

"Evidence as to statements by an agent made after the transaction in which he acted was over is not admissible as substantive evidence against his principal, but only to contradict the agent as a witness." *Farmers' Bank of Wickliffe v. Wickliffe,* 131 Ky., 787; 116 S. W., 249.

"In an action for damages from fire set by the alleged agents of defendant, evidence of admissions of the agents as to how the fire started, made in the absence of defendant and after the fire, are not admissible where not part of the *res gestæ.*" *Ward v. Powell* (Tex. Civ. App.), 127 S. W., 851.

"Statements made by the representative" of a person insured, after the death of such person, "are not binding on the beneficiaries entitled to the insurance." *Gilmore v. Co.,* 58 Wash., 203; 108 P., 447.

"The declarations in each instance were after the transaction was complete, and not in any sense made during its progress. They were not made *dum fervet opus.* They

were not a part of the *res gestæ*. They were merely hearsay, and hence had no probative value." *Miller v. McKenzie,* 126 Ga., 746; 55 S. E., 952.

In *Rookard v. Co.,* 84 S. C., 190; 65 S. E., 1047; 27 L. R. A. (N. S.), 435; 137 Am. St. Rep., 839, the Court said:

"If an agent commits a tort, while acting within the scope of the agency, the principal is liable, but if he makes declarations or admissions concerning it, so long afterwards that they cannot be admitted as part of the *res gestæ,* the principal is not bound by them."

In *Northwestern Union Packet Co. v. Clough,* 20 Wall., 528; 22 L. Ed., 406, the syllabus is:

"The conversations of a captain of a steamer with a party injured in getting on his boat, made two days and a half after the accident occurred, in which he attributed the accident to the carelessness of the servants of the boat in putting out the plank, is not evidence to charge the owners of the boat with fault, and this though made while the boat was still on its voyage and before the voyage upon which the injured party had entered was completed."

The opinion states:

"But an act done by an agent cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done or how he had done it, and his declaration is no part of the *'res gestæ.'* "

"It is a recognized principle that an agent can bind his principal while acting within the scope of his authority, and that declarations which are a mere narration of past events and do not form part of the *res gestæ* are not binding on the principal." *Williams v. Telegraph Co.,* 138 S. C., 281; 136 S. E., 218, citing *Petrie v. Railroad Co.,* 27 S. C., 64;

2 S. E., 837. *Garrick v. Railroad Co.*, 53 S. C., 448; 31 S. E., 334; 69 Am. St. Rep., 874. *Templeton v. Railroad Co.*, 117 S. C., 44, 108 S. E., 363.

"Declarations of an agent with respect to an act or transaction, made after the occurrence of the act or the completion of the transaction, are not provable against the principal." 1 R. C. L., 510, citing cases from Alabama, Colorado, Georgia, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, New York, Pennsylvania, South Carolina, Washington, and Wisconsin.

"The question of the agent's power to bind his principal by an admission is usually raised when the statement concerns a past fact. An agent, as such, has not power to make admissions, even in respect to a transaction in which he was himself concerned." Tiff. Agency, 283, citing cases.

"Admissions of an agent are admissible only when made in regard to a transaction in the course of his agency pending at the very time the declarations are made, and unless so connected with the transaction cannot bind the principal, though they are explanatory of an act previously done by the agent in the exercise of his agency." *Waldeck v. S. S. Co.*, 2 Cal. App., 167; 83 P., 158.

"The declarations of an agent are inadmissible against his principal, where made after the transaction in which the agent is authorized to act has been concluded." *Baldwin v. Bank*, 17 Colo. App., 7; 67 P., 179.

"The declarations of an agent as to the matter in his charge, accompanying his acts in relation thereto, are admissible with reference to the then existing state of affairs; but what he may have said at a time when the particular acts complained of were not under consideration is not admissible." *Waters v. St. Ry. Co.*, 101 Ill. App., 265.

"The fact that an agent is fully authorized to consummate a transaction does not authorize the admission of his dec-

larations narrating a past transaction with reference thereto." *Cleveland, C., C. & I. Ry. Co. v. Closser,* 126 Ind., 348; 26 N. E., 159; 9 L. R. A., 754; 22 Am. St. Rep., 593.

"The declarations of an agent are not admissible against his principal when they merely relate to a past transaction." *Acme Co. v. Madden,* 4 Kan. App., 598; 46 P., 319.

"Declarations and statements of an agent, not made in the course of his agency, but of and concerning past transactions in the principal's business, are hearsay and incompetent." *Jackson v. Insurance Co.,* 79 Minn, 43; 81 N. W., 545.

The evidence does not disclose the fact that the agent who issued the policy on August 2, 1926, had anything whatever to do with the adjustment of loss after the fire which occurred on August 24th. The plaintiff testified that after that event the company sent an adjuster to attend to that matter. That appears also from the nonwaiver agreement, "executed by the parties," and dated September 4th. The only connection that the agent had with the matter after the fire was to respond to inquiries made by the insured as to when he would get his money.

I think, therefore, that it clearly appears that any statement which the agent may have made as to what occurred at the time of the issuance of the policy was but a "narrative of past events," not within the scope of his agency or within the course of his employment, and was inadmissible.

It will doubtless be insisted that, conceding the inadmissibility of the agent's statement, it was received without objection, and is entitled to be considered as evidence in the case.

The admissibility of the evidence in question is none the less a matter of substantive law than that of parol evidence to alter a written instrument. The principle is well settled that, notwithstanding the reception of such evidence without objection, it is not entitled to be considered. See array of

authorities cited in the opinion of the writer in the case of *Buckeye Co. v. Cheraw Co.,* 142 S. C., at page 275, 140 S. E., 781, and following.

For these reasons, I think that his Honor, Judge Townsend, was entirely right in directing a verdict in favor of the defendant.